Michael **DAVISON** and Gwen Marie Davison, Plaintiffs,

v.

William **FREY,** Carl E. Van Wert, Thomas Hoffman, Larry Clock, County of Monroe, and Monroe County Board of Commissioners, Defendants.

Civ. A. No. 92–76934.

United States District Court, E.D. Michigan, S.D.

Nov. 16, 1993.

Marjory B. Cohen, Detroit, MI, for plaintiffs.

John H. Dise, Jr., Gus Morris, Detroit, MI, for defendants.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

GADOLA, District Judge.

Plaintiffs Michael Davison and Gwen Marie Davison filed a complaint alleging violations of 42 U.S.C. § 1983 and pendent state claims on December 4, 1992. The court dismissed plaintiffs' pendent state law claims set forth in Counts II, III, IV, and VI on December 18, 1992. Only plaintiffs' section 1983 claim remains. Before the court are defendants' motion for summary judgment and plaintiffs' motion for partial summary judgment. For the reasons discussed below, the court will grant in part and deny in part defendants' motion and will deny plaintiffs' motion.

**I. Background**

Plaintiff Lieutenant Michael Davison is a member of the Monroe County Sheriff's Department. He and his wife, Gwen Marie Davison, allege that former Monroe County Prosecutor William Frey violated their Fourth and Fourteenth Amendment rights by obtaining an illegal search warrant for their home. Plaintiffs have also named as defendants Monroe County Sheriff Carl Van Wert, Captain Thomas Hoffman and Sergeant Larry Clock of the Monroe County Sheriff's Department, the County of Monroe, and the Monroe County Board of Commissioners. Defendants Hoffman and Clock were the officers who executed the search warrant.

On April 17, 1992, defendant Frey completed an affidavit in support of a search warrant for plaintiffs' home. In the search warrant, Frey was seeking sheriff's department investigative files in connection with an investigation of whether a 1981 murder conviction had been wrongly obtained. The affidavit stated that Frey believed that Davison had a copy of the file based on a statement by Undersheriff Ronald Cole that Davison had made an offhand remark that he had part of the file at home.

In the affidavit, Frey stated that he was investigating "public corruption" regarding the 1981 murder. Frey claims that he was seeking the file because he was concerned that the person convicted of the 1981 murder was not guilty and that Davison may have been concealing exculpatory information. Frey apparently believed that the officers in charge of the 1981 murder may have colluded with a private minister to elicit a confession under coercive circumstances from the man who was ultimately convicted. Davison had been involved in the initial investigation of the murder in 1981. The affidavit states that Sheriff Van Wert told Frey that he had specifically instructed Davison several months before to turn over all investigative files pertaining to the murder that he may have in his possession at home or at the office.

Defendant Frey signed the affidavit for the search warrant as the affiant and as the prosecuting official. The affidavit was taken to Magistrate Howard Hoag, who signed the warrant after finding that probable cause existed for the search.

On April 17, 1992, Frey asked defendant Clock to execute the search warrant. Clock was reluctant because Davison was a superior officer and a member of the sheriff's department. As a result, Clock called the sheriff's department for further guidance. Defendant Hoffman then came to Frey's office and called Sheriff Van Wert, who was home sick. Sheriff Van Wert told Hoffman that if the warrant appeared valid, then they

should execute it. Hoffman responded that it appeared valid.

Defendants Clock and Hoffman went to the plaintiffs' home and searched a file cabinet and desk drawer in a bedroom. No documents relating to the 1981 murder were found. After approximately twenty-five minutes, Clock and Hoffman left without seizing anything.

Davison alleges that Frey sought the search warrant in retaliation for a grievance that Davison had filed against Frey with the Attorney Grievance Commission in 1988. At that time, Davison was investigating alleged ethical improprieties on the part of Frey. The investigation was later reopened in late 1991.

Plaintiffs have brought a motion for partial summary judgment on the issue of the facial validity of Frey's supporting affidavit and because the search warrant was overly broad and the information supporting it was stale. All of the defendants have joined in a motion for summary judgment based on a defense of qualified immunity.

## II. Standard of Review

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984) (citation omitted) (quoting Black's Law Dictionary 881 (6th ed. 1979)). The court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.,* 749 F.2d 1205, 1210–11 (6th Cir.1984).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.,* 801 F.2d 859, 861 (6th Cir.1986). The initial burden on the movant is not as formidable as some decisions have indicated. The moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg,* 801 F.2d at 861.

To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510, 2511, 91 L.Ed.2d 202 (1986),

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted). *See Catrett,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The standard for summary judgment mirrors the standard for a directed verdict under Fed.R.Civ.P. 50(a). *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. Consequently, a nonmovant must do more than raise some doubt as to the existence of a fact; the nonmovant must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact. *Lucas v. Leaseway Multi Transp. Serv., Inc.,* 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd,* 929 F.2d 701 (6th Cir.1991). The evidence itself need not be the sort admissible at trial.

*Ashbrook v. Block,* 917 F.2d 918, 921 (6th Cir.1990). However, the evidence must be more than the nonmovant's own pleadings and affidavits. *Id.*

### III. Analysis

 Plaintiffs allege that the April 17, 1992 search was conducted in violation of their right to be free from unreasonable searches and seizures under the Fourth and Fourteenth Amendments. Defendants have raised a defense of qualified immunity. In order to be shielded by qualified immunity, defendant Frey's request for a search warrant must have been objectively reasonable. *Malley v. Briggs,* 475 U.S. 335, 344–45, 106 S.Ct. 1092, 1097–98, 89 L.Ed.2d 271 (1986). "Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable, will the shield of immunity be lost." *Id.* (citation omitted). The issue then, is whether "a reasonably well-trained officer in [defendant's] position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." *Id.* Law enforcement officials are entitled to qualified immunity "unless the warrant is so lacking in probable cause that no officer of reasonable competence would have concluded that a warrant should issue." *Hutsell v. Sayre,* 5 F.3d 996, 1003 (6th Cir. 1993).

### A. Validity of Frey Affidavit

#### 1. Probable Cause

 The court finds that the search warrant was facially valid. A reasonably well-trained officer could have concluded that the affidavit established probable cause. The court does not find that the affidavit was so lacking in indicia of probable cause as to make reliance on it objectively unreasonable.

As plaintiffs admit, Frey became concerned that members of the sheriff's department may have colluded with a private citizen to coerce a confession out of an innocent man for a 1981 murder. Davison was involved in the original investigation of the crime and Frey thought that he might have exculpatory information. As set forth in the search warrant affidavit, Frey was told that Davison had been instructed by the sheriff to return all portions of the 1981 murder file to the department. Frey was then told that Davison later admitted that he still retained a portion of the file. Although not the strongest support for a finding of probable cause, the court cannot say that the affidavit lacked any information that would rise to the level of probable cause in the mind of some reasonably competent official. Given the fact that corruption and police misconduct were suspected, the fact that an officer involved in the original investigation had retained portions of the file after explicit orders to the contrary amounts to at least some indicia of probable cause.

The court readily admits that there could be great dispute over whether the affidavit amounts to probable cause to search the plaintiffs' residence. But a dispute as to the existence of probable cause is all that is needed in order to establish qualified immunity for an official who obtained a search warrant.

 Besides claiming that Frey's affidavit lacks any indicia of probable cause, plaintiffs contend that it contains false and reckless assertions. Where an official seeking a search warrant omits material facts, knowingly and intentionally makes false statements, or makes false statements with a reckless disregard for the truth in an affidavit in support of the warrant, the official cannot depend upon the shield of qualified immunity. *Salmon v. Schwarz,* 948 F.2d 1131, 1139–41 (10th Cir.1991); *see Franks v. Delaware,* 438 U.S. 154, 171–72, 98 S.Ct. 2674, 2684–85, 57 L.Ed.2d 667 (1978). The court finds that plaintiffs have raised several genuine issues of material fact concerning the truthfulness of the assertions contained in Frey's affidavit. Numerous questions remain as to the truthfulness of many of the affidavit's assertions and as to whether Frey intentionally or recklessly made any false statements. Because there are genuine issues of fact concerning the truthfulness of Frey's affidavit, the court will not grant defendants' motion for summary judgment as to defendant Frey.

### 2. Additional Issues

■ In their motion for partial summary judgment, plaintiffs claim that the warrant was overly broad and that the information contained in the affidavit was stale. The court rejects both of these arguments. The staleness argument stems from the fact that the specific time that Davison was alleged to have mentioned that he had a copy of the 1981 murder file was not stated in the affidavit.[1] The court finds, however, that the circumstances described in the affidavit clearly indicate that the information was fresh. It indicated that Sheriff Van Wert had instructed Davison about returning the files within the past few months. More importantly, it indicates that Undersheriff Cole, the man identified as having talked to Davison, had been assigned to the investigation of the 1981 murder on April 16, 1992, the day before the affidavit was signed.

■ The court also finds that the search warrant was not overly broad. The warrant sought "any and all investigative files, papers, etc., pertaining to investigations by the Monroe County Sheriff Department." The warrant was specifically limited to those papers relating to sheriff department investigations. Although the warrant may have included files other than the 1981 murder investigation, given the nature of the investigation and given the fact that personal papers were excluded from the warrant, the warrant was not overly broad and was reasonable. The warrant was clearly directed at files pertaining to the 1981 murder. The court will not accept plaintiffs' invitation to ignore common sense and engage in a hypertechnical reading of the affidavit.

### 3. Conclusions

The court is unwilling to find that, facially, Frey's affidavit was so lacking in indicia of probable cause as to make belief in its existence unreasonable. Under a standard of objective reasonableness, the information presented in the affidavit contained some indicia of probable cause. The court also finds, however, that genuine issues of materi-

al fact remain as to whether defendant Frey intentionally or recklessly made false statements in his affidavit. As a result, the court will not grant defendants' motion for summary judgment as to defendant Frey.

### B. Sheriff Department Defendants

■ Even though the court finds that genuine issues of material fact remain concerning the truthfulness of the assertions in Frey's affidavit, the court finds that defendants Clock, Hoffman, and Van Wert are entitled to qualified immunity based on their reliance on a facially valid search warrant obtained by the county prosecutor.

■ Clock and Hoffman simply executed the search warrant obtained by Frey. In such a case, "for purposes of section 1983 immunity, an officer is entitled to assume the validity of a search warrant secured by fellow officers." *Morris v. County of Tehama*, 795 F.2d 791, 795 (9th Cir.1986) (citing *Whiteley v. Warden, Wyoming State Penitentiary*, 401 U.S. 560, 568, 91 S.Ct. 1031, 1037, 28 L.Ed.2d 306 (1971); *see Salmon*, 948 F.2d at 1140–41 (officer who merely executed facially valid warrant entitled to qualified immunity). Clark and Hoffman acted reasonably in relying upon a search warrant obtained by the county prosecutor and signed by a magistrate. They did not sign the affidavit and application for the warrant.

For the same reasons, Sheriff Van Wert is also protected by qualified immunity. Sheriff Van Wert was home sick when he was called about the search warrant. He did not see the warrant and did not pass on its validity. He simply told a captain and a sergeant of the sheriff's department to execute the warrant if it appeared valid. Such conduct is clearly reasonable given the circumstances.

### C. Municipal Defendants

Plaintiffs have named Monroe County and the Monroe County Board of Commissioners as defendants to their claim. In the only remaining count of their complaint, however, plaintiffs do not allege any acts by either of

---

1. As it turns out, Davison admits making the statement on April 16, 1992, the day before the

search warrant was issued.

these defendants in violation of section 1983. In an introductory paragraph of their complaint, plaintiffs do allege that the two municipal defendants are liable for all damages caused by the intentional, reckless, or negligent acts of their employees that deprived plaintiffs of their constitutional rights. It is well settled, however, that municipalities cannot be found liable based on theories of respondeat superior or vicarious liability for section 1983 violations by their employees. *Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24, 105 S.Ct. 2427, 2436–37, 85 L.Ed.2d 791 (1985); *Monell v. Department of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978).

Even if plaintiffs' complaint presented a claim of municipal liability under section 1983, plaintiffs have failed to come forward with sufficient facts to oppose defendants' motion for summary judgment. In order for the Monroe County defendants to be liable under section 1983, plaintiffs must show that the alleged injuries were inflicted pursuant to a governmental custom, policy, or practice. *Id.* In addition, a single incident of unconstitutional activity does not establish an official policy or practice of a municipality sufficient to render the municipality liable for damages under section 1983. *Tuttle*, 471 U.S. at 823, 105 S.Ct. at 2436.

It is clear that plaintiffs have failed to meet their burden under *Monell*. They have made no showing of any policy or practice on the part of Monroe County or the Monroe County Board of Commissioners that led to the alleged constitutional violations. There is no basis or support for plaintiffs' mere allegations that these defendants are liable under section 1983. Their pleadings provide no factual support or specific instances for their claim against the Monroe County defendants.

Thus, after examining all of the evidence in the light most favorable to the plaintiffs, it is clear that there is no genuine issue of material fact on the issue of municipal liability. Plaintiffs have failed to show any policy, practice, or custom by these defendants that resulted in the alleged constitutional violations. As a result, defendants Monroe County and the Monroe County Board of Commissioners are entitled to summary judgement.

## ORDER

**NOW, THEREFORE IT IS HEREBY ORDERED** that plaintiffs' motion for partial summary judgment is **DENIED.**

**IT IS FURTHER ORDERED** that defendants' motion for summary judgment as to defendants Carl Van Wert, Thomas Hoffman, Larry Clock, County of Monroe, and Monroe County Board of Commissioners is **GRANTED.** Plaintiffs' complaint against defendants Carl Van Wert, Thomas Hoffman, Larry Clock, County of Monroe, and Monroe County Board of Commissioners is **DISMISSED** on the merits.

**IT IS FURTHER ORDERED** that defendants motion for summary judgment as to defendant William Frey is **DENIED.**

**SO ORDERED.**

## PARTIAL JUDGMENT

This action came before the Court, Honorable Paul V. Gadola, District Judge, presiding, and the issues having been duly considered and a decision having been duly rendered,

**IT IS ORDERED AND ADJUDGED** that plaintiffs Michael Davison and Gwen Marie Davison take nothing from defendants Carl Van Wert, Thomas Hoffman, Larry Clock, County of Monroe, and Monroe County Board of Commissioners and that the action against defendants Carl Van Wert, Thomas Hoffman, Larry Clock, County of Monroe, and Monroe County Board of Commissioners be dismissed on the merits.