BURDA BROTHERS, INCORPORAT-
ED; James Burda; Efim Burda; El-
issa Burda; Plaintiffs–Appellants,

v.

Raymond WALSH; Michigan State Po-
lice; Township of Canton; Wayne
County Prosecutor; John Santomau-
ro, Director; Scott Hughsdon;
Charles Raycraft; Robert Smedley;
Tammy Colling; Gary Gray; Alex
Wilson; Rick Pomorski; Debby
House; Rene Leblanc; Charles R.
Schumacher; Art Winkle; Michael
Rorabacher; Karla Keefer; Larry
Bohnsack; Russ Heatwolf; Mark
Schultz; John Doe, Doe's IV, V and
VI; and Edward Carravallah; Ali
Berry; Defendants–Appellees.

No. 00–1418.

United States Court of Appeals,
Sixth Circuit.

Oct. 12, 2001.

Before KENNEDY, GUY, and BOGGS, Circuit Judges.

PER CURIAM.

Plaintiffs appeal from the entry of summary judgment in favor of the defendants in two companion cases alleging claims under 42 U.S.C. § 1983 and seeking declaratory judgment.[1] The claims arose out of the struggle between plaintiffs, who engaged in the business of selling fireworks, and the various defendants involved in attempts to enforce Michigan's restrictions on the possession and sale of fireworks over the course of several fireworks seasons. After remanding the state law claims, the district court granted summary judgment in favor of the defendants on all of plaintiffs' § 1983 claims and denied plaintiffs' request for declaration that Michigan's fireworks statute was either preempted by federal regulation or unconstitutionally vague. *Burda Bros., Inc., et al. v. Walsh, et al.,* 61 F.Supp.2d 648 (E.D.Mich.1999).[2]

Challenging the dismissal of their Fourth Amendment claims, plaintiffs argue (1) that they are entitled to rely on offensive collateral estoppel to establish the invalidity of several seizures; or (2) that material questions of fact nonetheless made summary judgment on qualified immunity grounds improper. Plaintiffs also argue that the district court erred with respect to their First Amendment claim of retaliation for having exercised their right

1. The separately filed actions, which were removed from Wayne County Circuit Court by defendants, have overlapping defendants, facts, and claims. Treated as companion cases, the district court's orders bore the captions and case numbers from both cases and were filed in each case (No. 98–40396 and No. 98–40397). Since plaintiffs filed a single notice of appeal from the decisions to grant summary judgment and deny reconsideration in each case, this court's caption reflects a single appeal.

2. The district court declined to exercise supplemental jurisdiction over the state law claims and remanded them for further proceedings. Defendants indicate that the state court dismissed those claims on September 1, 2000, but have not provided us with a copy of that order.

to seek protection in the courts. Finally, plaintiffs contest the district court's determination that Michigan's fireworks law is not unconstitutionally vague. After review of the record and the arguments presented on appeal, we find no error and affirm.

## I.

The district court concisely outlined the parties to and claims asserted in the two actions. The same categories of defendants have filed briefs on appeal in support of the district court's decision. In the first action, plaintiffs' § 1983 claims arose out of the 1995 fireworks season and were brought against the Michigan State Police and its officers; Canton Township and its officials; and Wayne County and its Assistant Prosecuting Attorney Raymond Walsh. In the second action, the § 1983 claims related to a search and seizure on July 2, 1997, and were brought against Wayne County, Assistant Prosecuting Attorney Walsh, and two detectives from the Wayne County Sheriff's Department.

Before turning to the facts underlying these claims, a brief description of the relevant Michigan fireworks law is helpful. *See* MICH. COMP. LAWS ANN. §§ 750.243a–d. After defining "fireworks," including the subsets of "Class B" and "Class C" fireworks, section 750.243a provides that:

> (2) Except as provided in subsection (3) and sections 243b, 243c and 243d, a person, firm, partnership, or corporation *shall not offer for sale*, expose for sale, *sell at retail, keep with intent to sell at retail*, possess, give, furnish, transport, use, explode or cause to explode any of the following:
>
> . . . .

(c) Firecrackers, torpedoes, skyrockets, roman candles, daygo bombs, bottle rockets, whistling chasers, rockets on a stick, or other fireworks of like construction.

(d) Fireworks containing an explosive or inflammable compound or a tablet or other device commonly used and sold as fireworks containing [various listed explosives] or a compound containing these or other modern explosives.

*Id.* (emphasis added). Subsection (3) provides that a permit is not required for certain fireworks, including flat paper caps, toy pistols, noisemakers, sparklers, cone fountains, cylinder fountains, toy snakes, and signal flares. These fireworks all fit the definition of Class C fireworks. In addition, subsection (3) excepts the sale of fireworks that are to be shipped directly out of state in accordance with relevant federal regulations.[3]

The relevant permit provisions, set forth in section 750.243b, allow local authorities to grant a permit (1) for the use of prohibited fireworks "for public display by municipalities, fair associations, amusement parks, or other organizations or groups of individuals"; and (2) for dealers or jobbers to possess otherwise prohibited fireworks "for sale only to holders of permits as provided in this section." This section expressly states that these permits "shall not be transferrable."

There is no dispute that plaintiffs had a permit to possess otherwise prohibited fireworks for sale to holders of display permits. In addition to various challenges to the statutes themselves, plaintiffs (like other fireworks retailers in Michigan and elsewhere) used a scheme that attempts to circumvent the ban on the sale of restricted fireworks to the general public. Plain-

---

**3.** Plaintiffs maintained that they sold nothing but "consumer fireworks" defined as U.S. DOT Div. 1.4–g, which were formerly known as *DOT Class C fireworks.* It is clear, however, that federal "consumer fireworks" include both Michigan Class B and Class C fireworks.

tiffs would obtain a display permit on behalf of the unincorporated "American Fireworks Users Association" (AFUA) for a designated place and time. Then, when individuals wanted to purchase otherwise prohibited fireworks, sales clerks would provide them with "membership" in the AFUA. Purchasers were supposedly advised that the fireworks could only be used at the place and time designated in the permit. Believing that sales to AFUA members were not authorized by the AFUA's display permits, law enforcement considered plaintiffs' possession and sale of anything other than Michigan Class C fireworks to be in violation of the statute.

In June 1994, Canton Township fire officials advised plaintiffs that it would be enforcing Michigan's restrictions on the sale and storage of fireworks. When written protests by plaintiffs' counsel did not dissuade the township, plaintiffs filed suit in the Wayne County Circuit Court against Canton Township and obtained a temporary restraining order the next day. Plaintiffs claim that this TRO "engendered animus" on the part of the authorities, which allegedly motivated their enforcement efforts the following year.

In early 1995, Canton Township officials met a few times to discuss enforcement measures, including undercover purchases, and successfully opposed plaintiffs' request for a display permit at their place of business. Plaintiffs nonetheless obtained a permit on behalf of the AFUA for a fireworks display on the evening of July 4, 1995, at a designated location in Flat Rock, Michigan. Beginning in late May 1995, Canton Township police began making undercover purchases of restricted fireworks from plaintiffs' business and issuing citations.

With enforcement efforts underway, plaintiffs resuscitated the dormant civil case by filing a first amended complaint and a motion for preliminary injunction alleging that they were engaged in lawful sales of "consumer fireworks," had all required permits, and that the Michigan statute was preempted by federal regulation. On June 9, 1995, the circuit court entered a preliminary injunction based on plaintiffs' averments. The preliminary injunction, quoted in relevant part by the district court, became the underpinning for challenges to later searches and seizures. One provision, relied heavily upon by plaintiffs, restrained Canton Township and others acting in concert with them from:

> Engaging in mass seizures or confiscations of Plaintiffs' stock or closing Plaintiffs' business, without warrant or with a warrant based on the claim that Plaintiffs are engaged in an "illegal business," assuming that Plaintiffs' practices do not vary from those described in the complaint, or the claim that possesses [sic] "illegal fireworks," so long as Plaintiffs possess and display only U.S. DOT consumer fireworks (Division 1.4).

In the next paragraph, however, the preliminary injunction states that it:

> shall not restrain or enjoin the Defendant or its agents from engaging in law enforcement activities, or the initiation of criminal complaints or the initiation and processing of criminal prosecutions for any violation of the Michigan Fireworks Law or any other criminal statute against the Plaintiffs Burda Brothers, Inc., and the American Fireworks Users Association, Inc., or its agents, officers and employees.

No permanent injunction was ever entered.

Over the next several days, Canton officers made several undercover purchases that resulted in. charges for illegal fireworks sales. An affidavit for a search warrant was prepared by Walsh and signed by Detective Gray of the Michigan

State Police (MSP) on June 22, 1995. The affidavit did not make reference to the preliminary injunction. The search warrant, authorized after a judicial finding of probable cause, was executed by officers of the MSP on June 22, 1995. Officers seized 682 cases of restricted fireworks.[4]

In response, plaintiffs returned to circuit court and secured an Order dated June 26, 1995, which directed the return of all fireworks but allowed authorities to make records of the seized material for use in future criminal proceedings. Although the property was returned to plaintiffs the next day, Walsh filed an emergency interlocutory appeal. On June 28, 1995, the Michigan Court of Appeals issued a stay of the order and explicitly authorized reseizure of the property.

On June 30, 1995, at the direction of the Michigan Court of Appeals, the circuit court held a hearing and concluded that the June 22, 1995, seizures were invalid. The order, which was not entered until March 6, 1996, stated that the warrant was not based on probable cause because the affidavit omitted mention of the preliminary injunction and because the warrant used "overbroad" and "vague" terms found in the statute.

Plaintiffs allege that between the order authorizing reseizure and the decision invalidating the search, officers of the MSP held plaintiffs' trucks and warehouse "captive" and effectively closed the business to interstate and intrastate commerce. Several controlled purchases were also made during that time that formed the basis for another search warrant. That warrant, executed on June 30, 1995, is not challenged.

Next, on May 6, 1996, the circuit court granted plaintiffs' request for declaratory relief and invalidated Michigan's fireworks statute on the grounds of preemption. Canton Township appealed. In express reliance on the circuit court's preemption ruling, the pending criminal charges were dismissed on May 31, 1996. A month later, the Michigan Court of Appeals granted the prosecutor's motion to intervene in the civil case and entered a stay pending resolution of the appeal.

While that appeal was pending, the Michigan Court of Appeals expressly rejected the same preemption and vagueness arguments in a case brought by other fireworks retailers. See Stajos v. City of Lansing, 221 Mich.App. 223, 561 N.W.2d 116 (1997), lv. denied, 459 Mich. 851, 584 N.W.2d 588 (1998), cert. denied, 526 U.S. 1065, 119 S.Ct. 1455, 143 L.Ed.2d 542 (1999). Relying on Stajos, the Michigan Court of Appeals then reversed the earlier decision in plaintiffs' favor and held that the statute was not preempted by federal regulation. See Burda Bros., Inc. and AFUA, et al. v. Canton Township, No. 195051 (Mich.App. Jul. 1, 1997) (unpublished decision). Plaintiffs do not appeal from the district court's finding that their preemption claims were barred by the Rooker/Feldman doctrine.

On July 2, 1997, the Wayne County defendants obtained and executed a search warrant based on controlled purchases of restricted fireworks. Plaintiffs immediately filed a new lawsuit against Canton Township and Wayne County, which was assigned to the same judge as the earlier action. On July 3, 1997, the circuit court entered a TRO directing the return of the seized property. In a motion for reconsid-

---

**4.** Sgt. Gray states by way of affidavit that Jim Burda asked if he could restock the shelves following the seizure. When told he could restock with "legal" fireworks, Burda re-

sponded: "No, I'm going to stock with the same type that was seized and I will have a truck in overnight and we will be selling them the next day."

eration, the prosecutor argued that the reversal of the preemption ruling meant that the 1995 Preliminary Injunction was no longer in force. That motion was denied in March 1998.[5]

In June 1998, plaintiffs filed another lawsuit that became the lead action at issue here. Although filed in state court, the case was removed to federal court. Plaintiffs then amended the earlier lawsuit arising out of the 1997 seizures to allege claims under § 1983. Defendants removed that action as well, and the two cases were assigned to a single judge. Plaintiffs filed a motion for declaratory judgment and the defendants in each case filed motions to dismiss or for summary judgment. After remanding the state claims, the district court denied plaintiffs' request for declaratory relief and granted summary judgment in favor of all of the defendants on the § 1983 claims. Plaintiffs' motions for reconsideration were denied, and this timely appeal followed.

## II.

We review the district court's grant of summary judgment *de novo*. *Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997). Summary judgment is appropriate when there are no issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). We confine our review to the claims of error asserted by plaintiffs on appeal.

## A. Plaintiffs' § 1983 Claims against the Individual Defendants

■ Although the district court addressed these claims as part of the qualified immunity analysis, summary judgment was largely based on the determination that no constitutional violations had been established. We must address the threshold question of whether a constitutional right would have been violated on the facts alleged, before determining whether the individual defendants are entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 2155, 150 L.Ed.2d 272 (2001).

### 1. Offensive Collateral Estoppel

In their first claim of error, plaintiffs contend that the state court rulings conclusively established the lack of probable cause to obtain the search warrants that were executed on June 22, 1995, and July 2, 1997. The district court found that it was not bound by the state court's finding that the warrant executed on June 22, 1995, was not supported by probable cause. *See Burda Bros.*, 61 F.Supp.2d at 657 n. 2. While we agree with this conclusion, we affirm on different grounds than were articulated by the district court.[6]

■ Federal courts must apply state collateral estoppel law when determining whether a state court's judicial determina-

---

**5.** Although plaintiffs were largely able to thwart enforcement efforts, criminal charges brought against them in 1996 were not dismissed. In late 1998, the trial court ruled that neither the 1995 Preliminary Injunction, nor the AFUA permits could be asserted in defense to the charges. After that decision was affirmed, plaintiffs and others entered pleas of *nolo contendere* in February 1999. Plaintiffs' counsel argued unsuccessfully to set aside the pleas.

**6.** The requirement that federal courts make an "independent inquiry" concerning whether there has been an unreasonable search and seizure by state officials, relied on by the district court, actually concerns the question of whether evidence seized by state officers may be admitted in a federal criminal trial. *See Elkins v.. United States*, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960); *United States v. Wright*, 16 F.3d 1429 (6th Cir.1994).

tion has preclusive effect in a particular § 1983 action. *Haring v. Prosise*, 462 U.S. 306, 313, 103 S.Ct. 2368, 76 L.Ed.2d 595 (1983); *Allen v. McCurry*, 449 U.S. 90, 102, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). Under Michigan law, collateral estoppel precludes relitigation of an issue in a subsequent cause of action between the same parties or their privies, when the earlier proceeding resulted in a valid, final judgment and the same issue was actually litigated and necessarily determined. *People v. Gates*, 434 Mich. 146, 452 N.W.2d 627, 630–31 (1990). In determining whether an issue was "actually litigated" in the prior proceeding, it is necessary to consider whether the party against whom collateral estoppel is asserted has had a full and fair opportunity to litigate the issue. *Id.*

■ Plaintiffs rely on the following state court orders: (1) the June 26, 1995 "Emergency Order Directing the Return of Seized Property"; (2) the March 6, 1996 "Order Invalidating Search and Seizure of June 22, 1995"; (3) the May 31, 1996 Order dismissing the criminal charges; and (4) the July 3, 1997 "Temporary Restraining Order" directing the return of seized fireworks. It is immediately apparent that the May 31, 1996 Order dismissing the 1995 criminal charges cannot have collateral estoppel effect because, although final (as it was not appealed), the decision was expressly based on the circuit court's finding that the statute was preempted by federal regulation. In addition, the orders directing the return of property were neither final determinations, nor do they reflect that the question of probable cause was actually litigated.

■ That leaves only the March 6, 1996 Order Invalidating the Search of June 22, 1995, which was entered in a civil action against Canton Township. However, Can-

ton Township officers were not involved in executing the warrant. Rather, the affidavit for the warrant was prepared by Walsh and signed by Sgt. Gray of the MSP, neither of whom were party to the civil action. It was not until later that Walsh intervened on behalf of the Wayne County Prosecutor to challenge the preemption ruling on appeal.

This court has twice rejected an attempt to use collateral estoppel offensively against a defendant officer in a § 1983 action because the officer was not party to or in privity with a party to the earlier action. *See Kegler v. City of Livonia*, No. 97–2206, 1999 WL 133110 (6th Cir. Feb.23, 1999) (unpublished decision), *cert. denied*, 527 U.S. 1037, 119 S.Ct. 2396, 144 L.Ed.2d 796 (1999); *Wallace v. Mamula*, 93–3603, 1994 WL 389197 (6th Cir. Jul.26, 1994) (unpublished decision). Since the defendants, sued here in their individual capacities, did not have a personal stake in the outcome of the earlier proceeding, plaintiffs may not use collateral estoppel offensively to preclude the relitigation of the validity of the search warrant executed on June 22, 1995. *See, Kinslow v. Ratzlaff*, 158 F.3d 1104, 1106 (10th Cir.1998); *Tierney v. Davidson*, 133 F.3d 189, 195 (2d Cir.1998); *Kraushaar v. Flanigan*, 45 F.3d 1040, 1050 (7th Cir.1995).

## 2. Affiants' Omissions

■ Next, plaintiffs maintain that the failure to mention the preliminary injunction when seeking the search warrants created a question of fact on the issue of whether probable cause existed to support the search warrants executed on June 22, 1995, and July 2, 1997. *See Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).[7] The district court found that:

---

7. Officers are entitled to rely on a judicially

secured warrant for immunity in a § 1983

the clear terms of the June 9, 1995 preliminary injunction provide that nothing in that order should be read to foreclose investigation or prosecution for violation of the fireworks law. The preliminary injunction merely prevents defendants from punishing plaintiffs for displaying Class C fireworks in generally accessible areas. Defendants, however, had probable cause to believe that plaintiffs were illegally storing and selling fireworks *other than Class C fireworks*, in contravention of the fireworks law. Under those circumstances, it is at least debatable among reasonable officers that there is no need to inform a judicial officer of a potentially tangentially related preliminary injunction. Under those circumstances, this court finds that the individual defendants involved in the warrant application process are entitled to qualified immunity. *Burda Bros.*, 61 F.Supp.2d at 657–58 (footnote omitted). Plaintiffs maintain that the preliminary injunction protected their "business practices" unless their practices "varied" from those alleged and as long as they possessed only U.S. DOT Div. 1.4 consumer fireworks (the former federal Class C fireworks).

We reject the persistent contention that the preliminary ruling, based only on a likelihood of success on the merits, was a conclusive determination on the legality of the plaintiffs' "business practices." While the preliminary injunction was not modified or dissolved, there was also no final adjudication of whether plaintiffs' "business practices" violated Michigan's fireworks laws. Use of the AFUA's display permits to sell otherwise prohibited fireworks to the general public was ultimately rejected as a defense to criminal charges brought against the plaintiffs and their employees. This defense has also been rejected in other cases. *See People v. Lewis*, No. 95–26826 (Monroe County Cir. Ct. Oct. 16, 1995) (unpublished decision); *People v. Frey*, No. 98–29523 (Monroe County Cir. Ct. Aug. 18, 1999) (unpublished decision).

Even accepting that the preliminary injunction enjoined Canton Township from engaging in mass seizures based on a belief that plaintiffs were "engaged in an illegal business," there is a difference between that and securing search warrants based on probable cause to believe plaintiffs were routinely engaging in illegal sales of restricted fireworks to the general public. As the district court recognized, the preliminary injunction expressly stated that it did not enjoin or restrain enforcement activities or the initiation of criminal proceedings against plaintiffs for violation of the Michigan fireworks laws. Consequently, we find that there was no reason to inform a judicial officer of the preliminary injunction in requesting a search warrant based on controlled purchases of restricted fireworks (other than *Michigan* Class C fireworks) to undercover officers who did not have display permits. Nor was it necessary to recount that the 1995 search had been invalidated in seeking the search warrant in 1997.

■■■■ The sufficiency of a judicially authorized search warrant may be chal-

---

action claiming illegal search and seizure, unless the warrant is so lacking in indicia of probable cause that official belief in the existence of probable cause is unreasonable. *Malley v. Briggs*, 475 U.S. 335, 344–45, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). An officer cannot rely on the judicial determination of probable cause if he knowingly makes false statements or omissions in the affidavit such that but for those falsities the warrant would be without probable cause. *Yancey v. Carroll County*, 876 F.2d 1238, 1243 (6th Cir.1989). Plaintiffs do not challenge the grant of summary judgment to the individual defendants who were not involved in seeking the warrants.

lenged by a defendant if and only if (1) there is a substantial showing that the affiant engaged in deliberate falsehood or reckless disregard for the truth, and (2) a finding that probable cause would not be supported without the allegedly false material (or including the omitted material). *United States v. Atkin,* 107 F.3d 1213, 1216–17 (6th Cir.1997). First, we find that plaintiffs cannot establish that the defendants engaged in deliberate falsehood or reckless disregard for the truth by omitting mention of the preliminary injunction or other court orders in seeking search warrants based on undercover purchases of restricted fireworks. Second, notwithstanding the unappealed ruling by the state court in the earlier civil action, we are more than satisfied that the affidavits would still support a finding of probable cause to believe plaintiffs were violating Michigan's fireworks laws even if the omitted information had been included.[8]

### 3. Reseizure by the Michigan State Police

■ Plaintiffs alleged that between the Court of Appeals' authorization of the reseizure of property on June 28, 1995, and the ruling by the circuit court invalidating the search on June 30, 1995, the MSP illegally held their trucks and warehouse captive and left them unable to engage in either interstate or intrastate commerce. Treating this claim as arising under the Fourth Amendment, the district court concluded that "the allegations related to the reseizure of property are conclusory at best, and do not provide an adequate basis,

even if accepted as true, to overcome defendants' claim of qualified immunity." *Burda Bros.,* 61 F.Supp.2d at 658. Without elucidating the basis for this claim or directing us to any evidence that would support it, plaintiffs rest on this allegation and simply ask: "What more could you want?" We find no error by the district court.[9]

To the extent that plaintiffs seek to press this claim under the Fifth as well as the Fourth Amendment, plaintiffs fail to articulate the contours of this claim. *See United States v. James Daniel Good Real Property,* 510 U.S. 43, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993) (government's forfeiture of property implicates both Fourth and Fifth Amendment rights); *Soldal v. Cook County,* 506 U.S. 56, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992) (forcible removal of mobile home was a seizure for Fourth Amendment purposes).

### 4. First Amendment Retaliation Claim

■ Plaintiffs alleged that defendants harassed, arrested, and prosecuted them in retaliation for having exercised their First Amendment right to seek protection in the courts. The parties agree that plaintiffs must show that the exercise of their rights was a substantial or motivating factor in the defendants' allegedly retaliatory conduct. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). The district court, focusing on the June 9, 1995 preliminary injunction as the relevant

---

8. Plaintiffs emphasize that in a § 1983 action, unlike a suppression hearing in a criminal case, the probable cause inquiry under *Franks* is a jury question. *See Hill v. McIntyre,* 884 F.2d 271, 275–76 (6th Cir.1989). It is clear that in *Hill,* as in *Yancey* (which is cited in *Hill*), the issue is one for the jury only when the evidence creates a genuine issue of material fact for trial.

9. During this same time period, several undercover purchases were made from plaintiffs' business that resulted in criminal charges against plaintiffs' employees. A separate search warrant, which was not challenged by plaintiffs, was also executed on June 30, 1995.

protected activity, found that plaintiffs could not demonstrate that the enforcement actions would not have been taken "but for" the defendants' intent to interfere with the plaintiffs' rights. *Burda Bros.*, 61 F.Supp.2d at 657. Of particular significance to the district court was that enforcement actions preceded efforts to secure the preliminary injunction.

Plaintiffs correctly point out that they alleged that the retaliatory animus resulted from their having obtained a TRO in July 1994. This argument ignores the fact that the 1994 TRO was sought by plaintiffs *in response* to notice from Canton Township officials that it intended to prosecute violations of Michigan's fireworks statute. Enforcement efforts clearly preceded even plaintiffs' first foray in the courts.

Despite this fact, plaintiffs contend that an inference of retaliatory motive may be inferred from continued enforcement efforts, taken at Walsh's behest, and the timing of those actions in relation to various state court orders. We disagree. The fact that the assistant prosecutor did not abandon a hard-fought battle over both the validity and enforcement of the Michigan fireworks statute does not demonstrate retaliatory motive. Further, we find that the timing of the defendants' enforcement activities is obviously explained by the seasonal nature of plaintiffs' fireworks business rather than any relationship to plaintiffs' exercise of the right to petition the courts. Plaintiffs did not have a right to have the law go unenforced against them, *Futernick v. Sumpter Township*, 78 F.3d 1051, 1056 (6th Cir.1996), and seeking redress in the courts cannot shield them from prosecution.[10]

**B. Vagueness Challenge**

The district court rejected plaintiffs' vagueness challenge on the merits, concluding that "a thorough review of the statute indicates that the terms of the statute are more than adequately defined. The fact that the legislature was unable or unwilling to specifically list each and every conceivable kind of firework does not render the statute unconstitutionally vague." *Burda Bros.*, 61 F.Supp.2d at 659. The constitutionality of a statute is a question of law, which we review *de novo. United States v. Hill*, 167 F.3d 1055, 1063 (6th Cir.), *cert. denied*, 528 U.S. 872, 120 S.Ct. 175, 145 L.Ed.2d 148 (1999).

Plaintiffs argue that Michigan should incorporate the federal definitions of consumer fireworks because they better classify fireworks and include procedures to account for new or novel products. Plaintiffs contend that the discrepancy between federal and state definitions cause some to mistakenly believe that Michigan's restricted fireworks are the same as the more dangerous federal Class B devices. Whether or not it would be advisable for the Michigan legislature to adopt the federal definitions is beside the point.

"The standard for vagueness in a criminal statute is if it defines an offense in such a way that ordinary people cannot understand what is prohibited or if it encourages arbitrary or discriminatory enforcement." *United States v. Avant*, 907 F.2d 623, 625 (6th Cir.1990). When vagueness challenges do not involve First Amendment freedoms, they must be examined "in the light of the facts at hand." *United States v. Powell*, 423 U.S. 87, 92, 96 S.Ct. 316, 46 L.Ed.2d 228 (1975) (citations omitted). Plaintiffs argue that the stat-

---

**10.** Because we have found plaintiffs could not establish constitutional violations by the individual defendants, there can be no liability on the part of the municipal defendants. *City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986).

utes are vague (1) because the definitions and prohibitions set forth in section 750.243a include the phrases "and other similar devices," "other fireworks of like construction," and "other modern explosives"; and (2) because the various prohibitions and exceptions in section 750.243a are contradictory or cause some portion to be rendered surplusage.

As plaintiffs concede, however, these arguments were rejected by the Michigan Court of Appeals in *Stajos*, which explained that:

A fair review of the fireworks statute reveals a general prohibition coupled with certain limited exceptions. The permitted fireworks do not end with words such as "or other fireworks of like construction" as does the list of fireworks that may not be sold or used without a permit. Further, subsection 2(d) broadly forbids nonidentified fireworks containing an explosive or inflammable compound containing any of eleven different chemicals and metals or other modern explosives.

Thus, the wording of the statute suggests that the Legislature intended the exclusions to be broadly read and the exemptions to be narrowly read. Also, just because the items prohibited in subsection 2(c) such as firecrackers would also be prohibited by subsection 2(d) because they contain an explosive or inflammable compound, does not necessarily make subsection 2(c) nugatory. Rather, we consider the language used to have been the Legislature's way of providing a list of specific well-known fireworks it wanted prohibited and then adding subsection 2(d) to catch any other fireworks not excepted in subsection 3 using very expansive and overlapping language. Our interpretation of the statute merely requires one to imply in the phrase "and any other" at the end of

subsection 2(c) and before subsection 2(d).

*Stajos*, 561 N.W.2d at 120–21. The court in *Stajos* further supported this conclusion by relying on the legislative history relating to the 1978 amendment to the statute, which was intended to reverse the effect of a prior federal court decision that broadened the definition of fireworks permitted under Michigan law. *Id.* at 121. We agree with the district court that the Michigan fireworks statute, as interpreted by the Michigan courts, is not void on the grounds of vagueness.

AFFIRMED.