**Adrian K. FERGUSON and Kimberly Payne–Stikes, Plaintiffs,**

**v.**

**CITY OF LOUISVILLE, et al., Defendants.**

**CIVIL ACTION NO. 3:00CV–260–H.**

United States District Court, W.D. Kentucky, at Louisville.

April 30, 2002.

James M. Bolus, Jr., Bolus & Ragland, Louisville, KY, Jacqueline Kaye Schroering, Louisville, KY, for plaintiffs.

Lynne A. Fleming, Angela Turner Dunham, Louisville, KY, Mitchell L. Perry, Office of Jefferson County Atty., Louisville, KY, Richard A. Dennis, AUSA, United States Attorney's Office, Louisville, KY, for defendants.

## MEMORANDUM OPINION

HEYBURN, Chief Judge.

This case arises from the search of the home of Plaintiffs, Adrian Ferguson and Kimberly Payne–Stikes, and the arrest of Ferguson. Plaintiffs contend that both the search and arrest violated their Fourth and Fifth Amendment rights under the United States Constitution. They also assert state law claims for excessive execution, assault, false arrest, trespass and conversion against each of the law enforcement officials involved in the operation. All Defendants have moved for summary judgment. The Court has discussed the case with counsel. The Court will now consider this motion.

### I.

On March 3, 2000, eleven City of Louisville police officers, a Jefferson County police officer, and a special agent of the United States Secret Service executed a state warrant to search the residence at 1601 West Madison Street in Louisville, Kentucky, and to search the person of Plaintiff Adrian Ferguson, who lived there. In retrospect, it is clear that the warrant to search Ferguson was based upon a misidentification by a cooperating witness.

Bybee began investigating a suspected counterfeit money ring following the arrest of one Michael Lanham. Lanham told Bybee that he obtained counterfeit money from LaTonya Treat and Misty Washington. Bybee learned that Washington had a close relationship with a man named Charles King. After Bybee arrested Treat,

she told him that Washington was associated with a man named Bo. It was unclear whether King and Bo were the same person. Treat also stated that Bo was recently released from federal prison, and that she had seen him engaging in counterfeiting activity at a resident on 1601 West Madison Street. Bybee also learned that a man by the name of Charles King had received mail at 1601 West Madison Street, and obtained other evidence suggesting that Charles King was involved in money laundering at that address.

Bybee learned that a man named Adrian Ferguson lived at 1601 West Madison Street about the same time as Charles King or Bo. Ferguson had a police record. Bybee showed Treat a photo pack which included a photo of Ferguson. After some uncertainty, Treat picked out Ferguson's photo as the person she had previously identified as Bo. Bybee found that Ferguson had several previous criminal convictions. One of his court records showed his physical characteristics as 5′8″, 160 pounds.

On the basis of all of this information, Bybee put together a rather lengthy affidavit supporting a search warrant for the residence at 1601 West Madison Street and for the person of Adrian Ferguson. The affidavit indicated, among other things, that Ferguson was 5′8″ tall and 160 pounds. On the basis of Treat's identification, Bybee assumed that Adrian Ferguson was also known as Bo. It stated the information connecting the address on West Madison to the counterfeiting activity. The affidavit was not a complete statement of all the evidence which Bybee had obtained.

A state court issued the warrant, which Bybee and other officers executed. The officers searched the premises for about an hour and fifteen minutes, seizing approximately thirty five items that Plaintiffs contend were entirely (and obviously) unrelat-

ed to an ongoing criminal enterprise. Plaintiffs also allege that the officers destroyed certain property within the home, wrongfully searched Payne–Stikes' automobile, and unlawfully handcuffed and arrested Ferguson for driving without a valid license.

## II.

■ Of the multiple Defendants against whom Plaintiffs have filed claims, the most significant claim is against Bybee, who performed the bulk of the investigation and drafted the affidavit that supported the warrant application. The Court will therefore initially address the claims against Bybee separately.

■ If an officer obtains a warrant through material false statements or in reckless disregard for the truth, that officer may be liable under 42 U.S.C. § 1983. *See Hutsell v. Sayre,* 5 F.3d 996, 1003 (6th Cir.1993). However, officers are entitled to qualified immunity "unless the warrant is so utterly lacking in probable cause that no officer of reasonable competence would have concluded that a warrant should issue." *Id.*

To obtain the search warrant, Bybee composed an affidavit containing the following information: First, LaTonya Treat identified 1601 West Madison Street as the residence of Bo and a place where counterfeiting activity occurred. She identified Bo as a black male friend of Misty Washington and a person involved in counterfeiting. Second, Treat had previously provided significant and apparently truthful information about the counterfeiting conspiracy. Third, Bo was active in the conspiracy during January, 2000. Fourth, Adrian Ferguson was the only black male living at 1601 West Madison in January, 2000. Fifth, Treat identified Ferguson as the person she described as Bo. And sixth,

Ferguson a/k/a Bo was identified as 5′8″ tall and 160 pounds.

All of these material facts are either true or Bybee had sound reasons to believe them to be true. For instance, Ferguson was not actually 5′8″ and 160 pounds, but his police record indicates these to be his physical statistics. Furthermore, these characteristics matched Treat's description of the person she identified as Bo. To be sure, Ferguson was not Bo. However, Treat had identified Ferguson as Bo, and Bybee had reason to rely upon that identification. Taken together, these facts are clearly sufficient to support a finding of probable cause to search the residence at 1601 West Madison and the person of Adrian Ferguson.

Plaintiffs argue that Bybee's failure to include certain information shows that he lacked probable cause. Plaintiffs rely upon *Yancey v. Carroll County, Ky.*, 876 F.2d 1238 (6th Cir.1989) and *Hill v. McIntyre*, 884 F.2d 271 (6th Cir.1989), for the proposition that an officer may be liable for recklessly or knowingly including false information in an affidavit for a search warrant. In this case, however, it appears that all the information contained in the affidavit either was true or was based upon information upon which Bybee had reason to rely upon.

A different line of cases is, therefore, more relevant to the Court's analysis: those which discuss the effect of omitting potentially exculpatory information from an affidavit. In *United States v. Atkin*, the Sixth Circuit explained:

Although material omissions are not immune from inquiry under *Franks*,[1] we have recognized that an affidavit which omits potentially exculpatory information is less likely to present a question of impermissible official conduct than one which affirmatively includes false information. This is so because an allegation of omission "potentially opens officers to endless conjecture about investigative leads, fragments of information, or other matter that might, if included, have redounded to defendant's benefit." If the defendant does succeed in making a preliminary showing that the government affiant engaged in [a] "deliberate falsehood" or [a] "reckless disregard for the truth" in omitting information from the affidavit, the court must then consider the affidavit including the omitted portions and whether probable cause still exists.

107 F.3d 1213, 1217 (6th Cir.1997) (internal citations omitted). *Atkin* involved a criminal defendant's efforts to have evidence suppressed at trial, but the same analysis for examining the effect of omitted information upon the validity of a supporting affidavit has been extended to civil suits generally, as well as the context of qualified immunity defenses to Section 1983 claims specifically. *See Mays v. City of Dayton*, 134 F.3d 809, 815–17 (6th Cir. 1998); *Burda Bros., Inc. v. Walsh*, 2001 WL 1254808, at *6–7, 22 Fed.Appx. 423 (6th Cir.2001). Having established the analytic framework, the Court will review each of Bybee's omissions and the affidavit as a whole.

---

1. Under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), "the defendant is entitled to an evidentiary hearing on the veracity of the statements in the affidavit 'if and only if (1) there is a substantial preliminary showing that specified portions of the affiant's averments are deliberately or recklessly false *and* (2) a finding of probable cause would not be supported by the remaining content of the affidavit when the allegedly false material is set to one side.'" *Atkin*, 107 F.3d at 1216–17 (quoting *United States v. Campbell*, 878 F.2d 170, 171 (6th Cir.), *cert denied*, 493 U.S. 894, 110 S.Ct. 243, 107 L.Ed.2d 194 (1989)).

First, Plaintiffs say that Bybee should have stated in the affidavit that Washington was involved in the counterfeiting operation with her boyfriend, Charles King. Treat had identified Ferguson as the person she knew as Bo, not as a person she knew as Charles King. The record does not show that Bybee had information demonstrating that Charles King and Bo were the same individual. The information about Charles King does not bear directly upon the probable cause to believe that Bo and Ferguson are one and the same person.

Second, Plaintiffs say that Bybee knew that Bo and Charles King were the same size and that both were much smaller than Ferguson. However, nothing in the record suggests that Bybee was aware of Ferguson's actual physical characteristics. Bybee read in Ferguson's police records that Ferguson was 5′8″ tall and 160 pounds, roughly the same measurements of Bo as described by Treat. In other words, the police records-mistaken as they may have been-corroborated Treat's identification of Ferguson as Bo, regardless of whether Charles King had an identical build.

Third, Bybee did not include the fact that Charles King had received mail at 1601 West Madison Street prior to Ferguson taking up residence there. But, this omission does not change the material facts showing probable cause. In fact, it would support probable cause to search the residence at 1601 West Madison as the site of counterfeiting activity. It does not cast doubt on Treat's identification of Ferguson as a person associated with counterfeiting. Moreover, Bybee had information that Ferguson lived at 1601 West Madison during the time the counterfeiting conspiracy was ongoing. That Charles King received mail at 1601 West Madison Street does not undermine Bybee's probable cause to believe Ferguson engaged in criminal activity at 1601 West Madison Street during January, 2000.

Fourth, Treat stated that Bo had been recently released from federal prison, whereas Ferguson had never been in federal prison. Bybee did not include this in the affidavit. True, this fact exposes a discrepancy between Treat's identification of Ferguson and her description of Bo's background. However, this discrepancy does not contradict any of the known facts supporting the probable cause to believe that Ferguson was actively involved in counterfeiting conspiracy at 1601 West Madison.

Finally, Bybee did not disclose that he had found no information indicating that Ferguson had ever gone by the name Bo. While true, the absence of such information does not contradict the known evidence linking Ferguson to the site of counterfeiting activity. Nor does it completely contradict Treat's identification. It merely fails to corroborate it.

Taken together, the omissions do not come close to suggesting that Bybee engaged in a "deliberate falsehood" or "reckless disregard for the truth." None of the omitted information directly impugns or discredits the material statements supporting probable cause in the affidavit. Plaintiffs cannot credibly argue that Bybee included any information knowing that it was false. All the information submitted in the affidavit either was true or based upon evidence which Bybee believed to be true. Consequently, no one can say that inclusion of any of the evidence constituted a reckless disregard for the truth.

In retrospect, we know that Ferguson is not the person that Treat knew as Bo. However, at the time, Bybee had every reason to believe and act upon Treat's identification, even if it was less than 100 percent convincing. After all, Treat did pick Ferguson's photograph from a photo

pack of six pictures. It is certainly quite a coincidence that the person she identified is also the same person who actually lived at 1601 West Madison, the location she had previously identified as the site of counterfeiting activity. This is a coincidence too startling for a police detective to ignore. Even though some of the other evidence did not necessarily point in the same direction, the question before the Court is not whether Bybee had probable cause to arrest Ferguson for counterfeiting and certainly not whether he had probable cause to charge Ferguson with the crime. The question is whether he had a reasonable belief that the information in his possession suggested the reasonable possibility that criminal activity was occurring at 1601 West Madison Street and that a person identified as living there might be involved in the criminal activity. As stated by the Sixth Circuit:

> the non-lawyers who normally secure warrants in the heat of a criminal investigation should not be burdened with the same duty to assess and disclose information as a prosecutor who possesses a mature knowledge of the entire case and is not subject to the time pressures inherent in the warrant process. A statement of these differences does not condone deliberate misrepresentations in the warrant application process. Rather it points out that the obligations shouldered during the adjudication process should not be imposed by inference on the warrant application process.

*Mays*, 134 F.3d at 816. Hindsight demonstrates that Bybee was mistaken when representing in the affidavit that Ferguson was Bo, but Plaintiffs have introduced no evidence that his error was the product of a deliberate misrepresentation.

■ Lastly, even assuming the Court found that Bybee recklessly disregarded the truth in omitting information from the affidavit, and thus proceeded to the second step of a *Franks/Atkin* analysis, Plaintiffs claim would still fall short. Were the Court to consider the affidavit including the omitted portions, probable cause would still exist. Even if all of the following facts were present in the affidavit—i) Washington was involved in the counterfeiting operation with her boyfriend, Charles King; ii) Bo and King had the same physical description; iii) King received mail at 1601 West Madison Street; iv) Treat stated Bo had been a federal inmate, and Ferguson had never been in federal prison; and v) the authorities had no information that Ferguson employed the name Bo as an alias—there was still probable cause to issue the search warrant. Again, Treat told Bybee that a man named Bo, who lived at 1601 West Madison Street and was 5'8" and 160 pounds, was a counterfeiter. Treat then selected Ferguson's photo from a lineup and stated he was Bo. Ferguson lived at 1601 West Madison Street, and prior police records stated he was 5'8" and 160 pounds. This evidence strongly indicated that Ferguson was a counterfeiter, and the omitted facts do not defeat the initial finding of probable cause.

In sum, Bybee actions in obtaining and relying on the warrant were objectively reasonable, and he is therefore entitled to qualified immunity on this claim.

### III.

The remainder of Plaintiffs' claims require considerably less attention.

### A.

■ Turning to the remaining individual officers who participated in the search, even assuming that Bybee had improperly obtained the warrant, none of his colleagues would have had any reason to be aware of this fact. They had no cause to question a warrant signed by a Jefferson Circuit judge, and they proceeded upon a

reasonable belief that the warrant was valid. *See Davison v. Frey*, 837 F.Supp. 235, 240 (E.D.Mich.1993) ("for purposes of section 1983 immunity, an officer [merely executing a search warrant] is entitled to assume the validity of a search warrant secured by fellow officers") (quoting *Morris v. County of Tehama*, 795 F.2d 791, 795 (9th Cir.1986)) (citing *Whiteley v. Warden, Wyoming State Penitentiary*, 401 U.S. 560, 568, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971)).

Plaintiffs claim that the length of the search and the number of items taken violated their Fourth Amendment rights. However, the depositions of the various officers make an overwhelmingly persuasive case that they reasonably believed a thorough search was necessary. That the search turned up no actual evidence of counterfeiting and ultimately proved to be directed at the wrong person does not suggest that those conducting it acted without a reasonable belief in the necessity of their actions. The depositions of the officers provides overwhelming evidence of their belief that a thorough and painstaking search was necessary to uncover evidence of counterfeiting.

The individual officers' actions were likewise objectively reasonable, and they too are entitled to qualified immunity on Plaintiffs' Fourth Amendment claims.

### B.

■ Plaintiffs cannot prevail on a § 1983 claim against a municipality unless they establish the existence of a municipal policy or custom which led to the alleged constitutional deprivation. *See Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Plaintiffs literally make no argument that the City of Louisville has established such a custom or policy with respect to unlawful searches and seizures. Their claims against the city will therefore be dismissed.

### C.

■ In addition to Plaintiffs' claim that the individual Defendants' actions in obtaining and executing the warrant were unlawful, Plaintiffs also seek relief for a number of alleged violations committed during the course of the search. However, Plaintiffs do not make a persuasive argument that any of the state law causes of action may proceed, except to the extent Defendants damaged property in the course of their search.

Only Plaintiffs' constitutional and state claims challenging Adrian Ferguson's arrest bear any comment. Bybee knew that Ferguson's previous arrest was for carrying a concealed deadly weapon. The officers had found such a weapon concealed under a couch during their search. Ferguson was agitated upon arriving at his home about an hour after the search began. The officers also had reason to be concerned for their own safety based upon the concealed weapon discovery. Each of these concerns is enough to justify handcuffing. *See United States v. Fountain*, 2 F.3d 656, 663 (6th Cir.1993). At about the same time, the officers determined that Ferguson's license was expired and that he had been driving an automobile. Ferguson was arrested based on a reasonable belief that his arrest was appropriate. Moreover, Ferguson ultimately pled guilty to the charges against him in Jefferson District Court. This also precludes a Fifth Amendment or malicious prosecution claim against the officers. *See Heck v. Humphrey*, 512 U.S. 477, 484, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994).

### IV.

Finally, Defendants have conceded that during the course of the search some items

of property were damaged. There appears to be little reasonable explanation for such damages. Consequently, to the extent Plaintiffs' Fourth Amendment or state conversion claims assert damages for that destruction, those claims remain because the Court has not considered whether these claims may be brought under the Fourth Amendment, the state law claim of conversion or through an administrative claim process.

The Court will enter an order consistent with this Memorandum Opinion.

## ORDER

All the Defendants in this case have moved for summary judgment on all claims. At this time, the Court will sustain some of those motions and retain jurisdiction over the others for later consideration. Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendants' motions for summary judgment are SUSTAINED as to all claims, except as they may pertain to claims for damaged property. Except as to those claims Plaintiffs' causes of action are DISMISSED WITH PREJUDICE.

The Court will set a conference in the near future to resolve the claims for property damage.

This is not a final order.