David GLASS, Plaintiff,

v.

Timothy ABBO and John
Weise, Defendants.

James Patrick, Plaintiff,

v.

Timothy Abbo, Defendant.

Nos. CIV. 02–40183, CIV. 02–40315.

United States District Court,
E.D. Michigan,
Southern Division.

Sept. 3, 2003.

Timothy P. Murphy, St. Clair Shores, MI, for David Glass, plaintiff.

William P. Hampton, Secrest, Wardle, Farmington Hills, MI, for Timothy Abbo, Bloomfield Township Police Officer, John Weise, Bloomfield Township Police Officer, defendants.

### OPINION AND ORDER

GADOLA, District Judge.

Before the Court are two companion cases in which Defendants have filed nearly identical motions for summary judgment. Both complaints contain one count under 42 U.S.C. § 1983 alleging wrongful arrest—that is, alleging that Defendants, both Bloomfield Township police officers, violated Plaintiffs' right to be free from unreasonable seizure under the Fourth and Fourteenth Amendments when they arrested Plaintiffs. Both cases arise out of the same traffic stop in which Plaintiff Glass was a passenger in a vehicle driven by Plaintiff Patrick.

The Court held a hearing on both motions on June 24, 2003. For the reasons set forth below, the Court will grant summary judgment with respect to Plaintiff Patrick's case (No. 02–40315), and the Court will deny summary judgment with respect to Plaintiff Glass's case (No. 02–40183).

## I. BACKGROUND

At a traffic stop on November 14, 1999, Plaintiff Patrick was arrested for failing to stop upon police signal in violation of Bloomfield Township Ordinance 338.28.1202a.3.2a(1). Additionally, Plaintiff Glass was arrested for hindering a police officer in the discharge of his duty in violation of Bloomfield Township Ordinance 137.16.01(a). The essential facts regarding Plaintiff Patrick's failure to stop are not in dispute; however, the facts surrounding Plaintiff Glass's conduct at the traffic stop are in considerable dispute.

### A. Arrest of Plaintiff Patrick

During the evening of November 14, 1999, Defendant Abbo randomly checked license plates of vehicles while on patrol in a semi-marked police vehicle. Defendant Abbo ran a check of a license plate on a Mercury, and the check indicated that the licence plate was registered to a 1999 Ford Taurus and not a Mercury. The vehicle in question was a rented vehicle driven by Plaintiff Patrick. Plaintiff Glass was a passenger in the vehicle.

Plaintiffs noticed Defendant Abbo's vehicle following them while driving near the intersection of Telegraph Road and Square Lake Road in Bloomfield Township, Michigan. Shortly thereafter, Plaintiffs saw Defendant Abbo activate what appeared to be emergency lights. At this juncture, Plaintiff Patrick reports that he was unsure of whether the driver following him was actually a police officer. According to Plaintiff Patrick, he also was unsure of whether this apparent semi-marked police vehicle was attempting to stop him. Because the area was completely dark and because Plaintiff Patrick was suspicious of the apparent semi-marked police vehicle, Plaintiff Patrick did not immediately stop his vehicle. Rather, Plaintiff Patrick moved to the right lane and slowed down. To reduce the possibility of a misunderstanding, Plaintiff Patrick prompted Plaintiff Glass to call 911 and advised the 911 operator of their situation.

At approximately the same time, a second police vehicle joined the pursuit. This second pursuing vehicle was a fully-marked police vehicle driven by Defendant Weise. According to Plaintiff Patrick, Defendant Weise gave him multiple directions to stop. Nonetheless, even after Defendant Weise joined the pursuit in a fully-marked police vehicle, Plaintiff Patrick did not stop. Instead, Plaintiff Patrick elected to continue driving until he arrived at a gas station.

The gas station at which Plaintiff Patrick eventually stopped was the first illuminated area after Defendant Abbo turned on his emergency lights. Plaintiff Patrick pulled over roughly three miles after the semi-marked police vehicle began the pursuit and about a half-mile after the fully-marked vehicle joined the pursuit. At the stop, Plaintiff Patrick was arrested for failing to stop upon police signal in violation of Bloomfield Township Ordinance 338.28.1202a.3.2a(1).

### B. Arrest of Plaintiff Glass

Once Plaintiff Patrick stopped at the gas station, Plaintiff Glass alleges that he heard a command to "get out of the car" and that he immediately did so. Plaintiff Glass then heard a command to "get back in the car" and began to comply. However, according to Plaintiff Glass, Defendant Weise then told Plaintiff Glass to stay out of the vehicle.

Plaintiff Glass purportedly asked Defendant Weise why Defendants ordered Plaintiff Patrick to stop the vehicle. According to Plaintiff Glass, Defendant Weise did not respond; instead, Defendant Weise instructed Plaintiff Glass to put his hands behind his back because he was being arrested. Plaintiff Glass then lost his bal-

ance and, while holding on to the vehicle, Plaintiff Glass reportedly asked Defendant Weise to give him a moment to gain his balance. Defendant Weise did not respond. At this point, Plaintiff Glass alleges that Defendant Abbo rushed over to the passenger's side of the vehicle and sprayed Plaintiff Glass with a substance. The substance is purported to be pepper spray.

Defendants disagree with Plaintiff Glass's account of the facts surrounding his arrest. In short, Defendants perceived Plaintiff Glass to be uncooperative and belligerent during the stop. According to Defendants, Plaintiff Glass ignored instructions to stay in the vehicle. According to Defendants, Plaintiff Glass was shouting at Defendants and waving his hands at Defendants in a threatening manner. According to Defendants, Plaintiff Glass grabbed hold of the vehicle to avoid being handcuffed. Finally, Defendants aver that they sprayed Plaintiff Glass with pepper spray after he ignored repeated warnings to release the vehicle. Once Plaintiff Glass was subdued by the spray, Defendants handcuffed him and charged him with hindering a police officer in the discharge of his duty in violation of Bloomfield Township Ordinance 137.16.01(a)

### C. Procedural History

Subsequently, the Honorable David Kerwin, District Judge for the State of Michigan's Forty–Eighth Judicial District Court held a probable cause hearing in the underlying criminal case to this civil action. After hearing testimony from Defendant Abbo and Defendant Weise, Judge Kerwin dismissed the charges against Plaintiff Patrick and Plaintiff Glass. Judge Kerwin first ruled that Defendants acted in complete absence of probable cause, but he then amended that ruling by stating that Defendant Abbo had probable cause to order the traffic stop but not the arrests.

Thereafter, Plaintiff Glass filed suit in this Court against Defendant Abbo and Defendant Weise alleging that Defendants "intentionally deprived [Plaintiff] Glass of the right to be free from unreasonable seizure, guaranteed to [Plaintiff] Glass under the Fourth and Fourteenth Amendments." Compl. (No. 02–40183) at ¶ 20. Later, Plaintiff Patrick also filed suit lodging this same wrongful arrest complaint against Defendant Abbo. *See* Compl. (No. 02–40315) at ¶ 20. In both cases, Defendants have moved for summary judgment.

### II. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Martin v. Ohio Tpk. Comm'n,* 968 F.2d 606, 608 (6th Cir.1992).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party. *See 60 Ivy St. Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir. 1987). The Court is not required or permitted, however, to judge the evidence or make findings of fact. *See id.* at 1435–36. The moving party has the burden of show-

ing conclusively that no genuine issue of material fact exists. *See id.* at 1435.

A fact is "material" for purposes of summary judgment where proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *See Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, where a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *See id.; Feliciano v. City of Cleveland,* 988 F.2d 649, 654 (6th Cir.1993).

Once the moving party carries the initial burden of demonstrating that no genuine issues of material fact are in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue. As the Supreme Court of the United States has stated, "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *Dombrowski v. Eastland,* 387 U.S. 82, 87 S.Ct. 1425, 18 L.Ed.2d 577

(1967)); *see also Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Consequently, the nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *See Lucas v. Leaseway Multi Transp. Serv., Inc.,* 738 F.Supp. 214, 217 (E.D.Mich.1990) (Gadola, J.), *aff'd,* 929 F.2d 701 (6th Cir.1991). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505; *see also Cox v. Ky. Dep't of Transp.,* 53 F.3d 146, 150 (6th Cir.1995).

## III. ANALYSIS

▮▮▮ Plaintiffs contend that Defendants wrongfully arrested them because Defendants lacked probable cause for the arrests. *See* Compl. (No. 02–40183) at ¶ 16; Compl. (No. 02–40315) at ¶ 15; Pls. Brs. at 8–9. "[I]t is well established that any arrest without probable cause violates the Fourth Amendment." [1] *Crockett v. Cumberland Coll.,* 316 F.3d 571, 580 (6th Cir.2003) (citing *Klein v. Long,* 275 F.3d 544, 550 (6th Cir.2001); *Gardenhire v. Schubert,* 205 F.3d 303, 315 (6th Cir.2000); *Ahlers v. Schebil,* 188 F.3d 365, 370 (6th Cir.1999)).

In moving for summary judgment, Defendants counter that they did have probable cause to arrest Plaintiffs. Thus, Defendants argue that they are entitled to summary judgment because the existence

---

1. "By virtue of its 'incorporation' into the Fourteenth Amendment, the Fourth Amendment requires the States to provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty." *Crockett,* 316 F.3d at 580 (quoting *Baker v. McCollan,* 443 U.S. 137, 142–43, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)).

of probable cause is a complete defense to a § 1983 wrongful arrest claim. *See* Defs. Brs. at 7 (citing *Garner v. Memphis Police Dep't*, 600 F.2d 52 (6th Cir.1979); *Wolfel v. Sanborn*, 555 F.2d 583 (6th Cir.1977)).

## A. Collateral Estoppel

■ Plaintiffs, however, argue that the issue of whether probable cause existed for the arrests has already been decided by the state court, and Plaintiffs maintain that the state court's probable cause ruling should preclude relitigation of the issue in this civil action. Thus, the preliminary question before the Court is: can a § 1983 plaintiff collaterally estop a police officer from relitigating the issue of probable cause when the plaintiff won a favorable probable cause ruling in a prior state criminal proceeding? In this case, the answer is no.

■ "Federal courts must apply state collateral estoppel law when determining whether a state court's judicial determination has preclusive effect in a particular § 1983 action." *Burda Bros., Inc. v. Walsh*, 22 Fed.Appx. 423, 429–30 (6th Cir. 2001) (citing *Haring v. Prosise*, 462 U.S. 306, 313, 103 S.Ct. 2368, 76 L.Ed.2d 595 (1983); *Allen v. McCurry*, 449 U.S. 90, 102, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980)).[2] "Under Michigan law, collateral estoppel precludes relitigation of an issue in a subsequent cause of action between the same parties or their privies, when the earlier proceeding resulted in a valid, final judgment and the same issue was actually liti-

gated and necessarily determined. In determining whether an issue was 'actually litigated' in the prior proceeding, it is necessary to consider whether the party against whom collateral estoppel is asserted has had a full and fair opportunity to litigate the issue." *Burda Bros.*, 22 Fed. Appx. at 430 (citing *People v. Gates*, 434 Mich. 146, 154–55, 452 N.W.2d 627, 630–31 (1990)).[3]

In three similar cases involving Michigan law, the United States Court of Appeals for the Sixth Circuit has rejected plaintiffs' attempts to use collateral estoppel offensively against police officers in § 1983 actions; in each case, the Sixth Circuit held that the officers were not parties to or in privity with parties to the earlier action. *See Von Herbert v. City of St. Clair Shores*, 61 Fed.Appx. 133, 136 n. 1, 2003 WL 1194304 (6th Cir.2003); *Burda Bros.*, 22 Fed.Appx. at 430; *Kegler v. City of Livonia*, 173 F.3d 429, 1999 WL 133110, at *2 n. 2 (6th Cir.1999). The Sixth Circuit reasoned as follows: "because the Officers were not party to or in privity with a party to the earlier action, collateral estoppel does not apply." *Von Herbert*, 61 Fed. Appx. at 136 n. 1 (citing *Burda Bros.*, 22 Fed.Appx. at 430).

Here, Defendants clearly were not parties to the prior criminal case. Furthermore, since Defendants in this case, like the defendants in these three other Sixth Circuit cases, "did not have a personal stake in the outcome of the earlier proceeding," they are not privies; and thus,

---

**2.** *See also Darrah v. City of Oak Park*, 255 F.3d 301, 311 (6th Cir.2001) (citing *Haring*); *Kegler v. City of Livonia*, 173 F.3d 429, 1999 WL 133110, at *2 n. 2 (6th Cir.1999) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984)); *Wallace v. Mamula*, 30 F.3d 135, 1994 WL 389197, at *2 (6th Cir.1994) (citing 28 U.S.C. § 1738; *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 466, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982)).

**3.** *See also Darrah*, 255 F.3d at 311 (citing *Gates*); *Kegler*, 173 F.3d 429, 1999 WL 133110, at *2 n. 2 (citing *Lumley v. Bd. of Regents*, 215 Mich.App. 125, 131–32, 544 N.W.2d 692, 696 (1996); *Amalgamated Transit Union v. S.E. Mich. Transp. Auth.*, 437 Mich. 441, 473 N.W.2d 249 (1991)); *Barrow v. Pritchard*, 235 Mich.App. 478, 480–81, 597 N.W.2d 853, 855–56 (1999) (collecting Michigan cases).

"[P]laintiffs may not use collateral estoppel offensively to preclude the relitigation" of the existence of probable cause for the arrests. *Burda Bros.*, 22 Fed.Appx. at 430 (citing *Kinslow v. Ratzlaff*, 158 F.3d 1104, 1106 (10th Cir.1998); *Tierney v. Davidson*, 133 F.3d 189, 195 (2d Cir.1998); *Kraushaar v. Flanigan*, 45 F.3d 1040, 1050 (7th Cir.1995)); *see also Von Herbert*, 61 Fed. Appx. at 136 n. 1; *Kegler*, 173 F.3d 429, 1999 WL 133110, at *2 n. 2.[4]

Consequently, as collateral estoppel does not apply here, the Court must review anew the question of whether a constitutional violation occurred on the facts alleged. That is, the Court must address whether the evidence, when viewed most favorably to Plaintiffs, states a claim that Defendants arrested Plaintiffs without probable cause. *See Crockett*, 316 F.3d at 580 (citing *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir.1995) (explaining that a § 1983 claim for wrongful arrest turns on whether the police officer had probable cause under the Fourth Amendment)).

### B. Probable Cause Standard

 For a police officer "to have probable cause for arrest, there must be 'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense.'" *Crockett*, 316 F.3d at 580 (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979); citing *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir.2002); *Klein*, 275 F.3d at 550; *Donovan v. Thames*, 105 F.3d 291, 298 (6th Cir.1997)). "In the § 1983 context, the question of whether probable

cause existed is left for the jury, unless there is only one reasonable determination possible." *Crockett*, 316 F.3d at 581 (citing *Fridley*, 291 F.3d at 872; *Klein*, 275 F.3d at 550; *Gardenhire*, 205 F.3d at 315; *Pyles*, 60 F.3d at 1215).

### C. Plaintiff Patrick

 In Plaintiff Patrick's case, there is only one reasonable determination possible: there was probable cause to arrest Plaintiff Patrick for failing to stop upon a police signal in violation of Bloomfield Township Ordinance 338.28.1202a.3.2a(1).

This ordinance provides:

> If a driver of a motor vehicle is given a visual or audible signal by hand, voice, emergency light, or siren by a police officer who is acting in the lawful performance of his or her duty and who is directing the driver to bring his or her motor vehicle to a stop and the driver willfully fails to obey such direction by increasing his or her speed, extinguishing his or her lights, or otherwise attempting to flee or elude the officer, the driver shall be punished, upon conviction, as provided in section 9.3(2) of this code.

Def. Br. (No. 02–40315) Ex. C (Ordinance 338.28.1202a.3.2a(1)).

The essential facts regarding Plaintiff Patrick's failure to stop are not in dispute. Although Plaintiff Patrick may have been confused by or suspicious of the semi-marked police vehicle, there was no confusion or suspicion anent the fully-marked police vehicle driven by Defendant Weise. Focusing solely on the period after the fully-marked police vehicle joined the pursuit, the Court concludes that there is no doubt that probable cause existed for Plaintiff Patrick's arrest. In his deposi-

---

4. *Cf. Wallace*, 30 F.3d 135, 1994 WL 389197, at *3–4 (same result under Ohio law) (citing *Schwab v. Wood*, 767 F.Supp. 574, 578–83 (D.Del.1991)).

tion, Plaintiff Patrick admitted that he willfully refused to obey Defendant Weise's direction to stop the vehicle on at least two occasions over a distance of approximately a half-mile. The following is the pertinent portion of Plaintiff Patrick's deposition:

> [Plaintiff Patrick]: I kept driving and then shortly thereafter a marked police car comes and he pulls up along the side of us.... He pulled up along the side of my vehicle, the police car that is, rolled down his passenger window, I rolled down my driver's window, and he yelled out "Pull over". It was later that I found out that individual was Officer Weise. I yelled back to him, along with [Plaintiff Glass], "We're pulling over at the gas station," which was pretty short. The distance would be probably less than, I'll say, 500 feet.
>
> Q: So from the time when the marked police car came up alongside of you and motioned you or yelled to pull over, you had, let's say, a half-a-mile or less than a half-mile until you got to the gas station?
>
> [Plaintiff Patrick]: Right.
>
> Q: Then when you got to the gas station what did you do?
>
> [Plaintiff Patrick]: Before that, he yelled out "Pull over," and we yelled back "We're pulling over at the gas station." He looked as though he acknowledged what we said, he backed off a little bit and we kept driving. He pulled up again and said "Pull over now". At this point we're pulling into the Mobil gas station and I yelled back to him "I'm pulling into the gas station right here."

Pl. Br. (No. 02–40315) Ex. 1 at 27–28 (Patrick Deposition).

These admissions by Plaintiff clearly show that the facts and circumstances of the pursuit were sufficient to warrant a prudent person in believing that Plaintiff Patrick was committing the offense for which he was arrested. Plaintiff Patrick admitted to receiving multiple police signals from the fully-marked police vehicle directing him to stop his vehicle. Further, given the duration of the pursuit, the circumstances were sufficient to warrant the belief that Plaintiff Patrick was willfully failing to obey the direction to stop by attempting to flee or elude the officers. Therefore, even when the facts are viewed in the light most favorable to Plaintiff Patrick, the only reasonable determination is that probable cause existed for the arrest. Consequently, Defendant Abbo is entitled to summary judgment with respect to Plaintiff Patrick's case. *See Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) ("If no constitutional right would have been violated were the [plaintiff's] allegations established, there is no necessity for further inquiries ..."); *Crockett,* 316 F.3d at 580–81; *Pyles,* 60 F.3d at 1215.

### D. Plaintiff Glass

#### 1. Probable Cause

■ Plaintiff Glass's case is not so clear cut. Plaintiff Glass has raised genuine issues of material fact about the existence of probable cause for his arrest on charges of hindering a police officer in the discharge of his duty.

Bloomfield Township Ordinance 137.16.01(a) provides:

> No person shall resist any police officer ... while in the discharge or apparent discharge of his duty, or in any way interfere with or hinder him with the discharge of his duty.

Def. Br. (No. 02–40183) Ex. C (Ordinance 137.16.01(a)).

In viewing the facts alleged most favorable to Plaintiff Glass, there is legitimate factual question as to whether probable cause existed for Plaintiff Glass's arrest.

According to Plaintiff Glass, he was told to get out of the vehicle, then to get back into the vehicle, and then to stay out of the vehicle. *See* Pl. Br. (No. 02–4018.) Ex. 1 at 26–27 (Glass Deposition). Plaintiff Glass avers that he did his best to comply with these instructions. *See id.* Next, Plaintiff Glass states that he simply began asking questions about the reasons for the stop. *See id.* at 27. At that point, according to Plaintiff Glass, Defendant Weise began to arrest Plaintiff Glass. *See id.* at 28. Plaintiff Glass alleges that he did not instantly submit to the arrest because he was attempting to balance himself by holding on to the vehicle. *See id.* Plaintiff Glass alleges that, at that moment, he was sprayed with pepper spray and handcuffed. *See id.* at 28–29. Hearing this testimony, a reasonable jury could find that Plaintiff Glass was arrested without probable cause; consequently, Defendants are not entitled to summary judgment on the grounds that probable cause existed for the arrest. *Crockett,* 316 F.3d at 581.

## 2. Qualified Immunity

 Nevertheless, Defendants further argue that they are entitled to summary judgment on qualified immunity grounds. "In civil suits pursuant to 42 U.S.C. § 1983 for money damages, qualified immunity protects a public official from being sued as long as the official 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Crockett,* 316 F.3d at 579 (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Therefore, assuming *arguendo* that a constitutional right has been violated, the Court must assess whether that right was clearly established at the time of the alleged violation. *See Saucier,* 533 U.S. at 200–01, 121 S.Ct. 2151.

There is more to this inquiry than meets the eye. In *Anderson v. Creighton,* Jus-tice Scalia explained the nuances of the "clearly established" test as follows:

> When government officials abuse their offices, "action[s] for damages may offer the only realistic avenue for vindication of constitutional guarantees." [*Harlow,* 457 U.S. at 814, 102 S.Ct. 2727]. On the other hand, permitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties. [*Id.*] Our cases have accommodated these conflicting concerns by generally providing government officials performing discretionary functions with a qualified immunity, shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated. *See, e.g., Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law"); *id.,* at 344–345, 106 S.Ct. 1092 (police officers applying for warrants are immune if a reasonable officer could have believed that there was probable cause to support the application); *Mitchell v. Forsyth,* 472 U.S. 511, 528, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (officials are immune unless "the law clearly proscribed the actions" they took); *Davis v. Scherer,* 468 U.S. 183, 191, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984); *id.,* at 198, 104 S.Ct. 3012 (Brennan, J., concurring in part and dissenting in part); [*Harlow,* 457 U.S. at 819, 102 S.Ct. 2727]. *Cf., e.g., Procunier v. Navarette,* 434 U.S. 555, 562, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978). Somewhat more concretely, whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns

on the "objective legal reasonableness" of the action, [*Harlow,* 457 U.S. at 819, 102 S.Ct. 2727], assessed in light of the legal rules that were "clearly established" at the time it was taken, *id.,* at 818, 102 S.Ct. 2727.

The operation of this standard, however, depends substantially upon the level of generality at which the relevant "legal rule" is to be identified. For example, the right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that Clause (no matter how unclear it may be that the particular action is a violation) violates a clearly established right. Much the same could be said of any other constitutional or statutory violation. *But if the test of "clearly established law" were to be applied at this level of generality, it would bear no relationship to the "objective legal reasonableness" that is the touchstone of Harlow.* Plaintiffs would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights. *Harlow* would be transformed from a guarantee of immunity into a rule of pleading. Such an approach, in sum, would destroy "the balance that our cases strike between the interests in vindication of citizens' constitutional rights and in public officials' effective performance of their duties," by making it impossible for officials "reasonably [to] anticipate when their conduct may give rise to liability for damages." [*Davis,* 468 U.S. at 195, 104 S.Ct. 3012]. *It should not be surprising, therefore, that our cases establish that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a* reasonable *official would understand that what he is doing violates that right.* This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, *see [Mitchell,* 472 U.S. at 535 n. 12, 105 S.Ct. 2806]; but it is to say that *in the light of pre-existing law the unlawfulness must be apparent. See, e.g., [Malley,* 475 U.S. at 344–45, 106 S.Ct. 1092; *Mitchell,* 472 U.S. at 528, 105 S.Ct. 2806; *Davis,* 468 U.S. at 191, 195, 104 S.Ct. 3012].

Anderson contends that the Court of Appeals misapplied these principles. We agree. The Court of Appeals' brief discussion of qualified immunity consisted of little more than an assertion that a general right Anderson was alleged to have violated—the right to be free from warrantless searches of one's home unless the searching officers have probable cause and there are exigent circumstances—was clearly established. The Court of Appeals specifically refused to consider the argument that it was not clearly established that the circumstances with which Anderson was confronted did not constitute probable cause and exigent circumstances. The previous discussion should make clear that this refusal was erroneous. *It simply does not follow immediately from the conclusion that it was firmly established that warrantless searches not supported by probable cause and exigent circumstances violate the Fourth Amendment that Anderson's search was objectively legally unreasonable.* We have recognized that *it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present,* and we have indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held person-

*ally liable. See [Malley,* 475 U.S. at 344–45, 106 S.Ct. 1092]. The same is true of their conclusions regarding exigent circumstances.

*It follows from what we have said that the determination whether it was objectively legally reasonable to conclude that a given search was supported by probable cause or exigent circumstances will often require examination of the information possessed by the searching officials.* But contrary to the Creightons' assertion, this does not reintroduce into qualified immunity analysis the inquiry into officials' subjective intent that *Harlow* sought to minimize. *See [Harlow,* 457 U.S. at 815–20, 102 S.Ct. 2727]. *The relevant question in this case, for example, is the objective (albeit fact-specific) question whether a reasonable officer could have believed Anderson's warrantless search to be lawful, in light of clearly established law and the information the searching officers possessed.* Anderson's subjective beliefs about the search are irrelevant.

The principles of qualified immunity that we reaffirm today require that Anderson be permitted to argue that he is entitled to summary judgment on the ground that, in light of the clearly established principles governing warrantless searches, he could, as a matter of law, reasonably have believed that the search of the Creightons' home was lawful.

483 U.S. 635, 638–41, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (Scalia, J.) (emphasis added; footnotes omitted). *See also Saucier,* 533 U.S. at 205, 121 S.Ct. 2151; *Crockett,* 316 F.3d at 579; *Greene v. Barber,* 310 F.3d 889, 893 (6th Cir.2002).

Applying these principles to the case at bar, there is no question that arresting an individual without probable cause violates the clearly-established Fourth Amendment, but this is the over-generalized inquiry that *Anderson* ruled against. 483

U.S. at 639–40, 107 S.Ct. 3034. Accordingly, the proper inquiry is whether a reasonable officer could have believed Defendants' arrest of Plaintiff Glass to be lawful, in light of clearly established law and the information the arresting officers possessed. *See id.* at 641, 107 S.Ct. 3034; *see also Saucier,* 533 U.S. at 205, 121 S.Ct. 2151; *Crockett,* 316 F.3d at 579; *Greene,* 310 F.3d at 893. Therefore, if Defendants "reasonably but mistakenly conclude[d] that probable cause [was] present," they are entitled to qualified immunity. *Anderson,* 483 U.S. at 641, 107 S.Ct. 3034.

If, in fact, Defendants did make a mistake (i.e., if they did not have probable cause to arrest Plaintiff Glass), any such mistake may have been reasonable. However, the parties have presented sharply different factual accounts of the circumstances surrounding Plaintiff Glass's arrest. The events of the evening in question are so murky that the Court is unable to determine, as a matter of law, whether, in light of the information that Defendants possessed, a reasonable officer could have believed that the arrest of Plaintiff Glass was lawful. *See id.* at 641, 107 S.Ct. 3034. Therefore, because of the "fact-intensive nature of the requisite inquiry" of determining objective reasonableness in this case, the Court cannot resolve the qualified immunity question at this stage of the proceeding. *Greene,* 310 F.3d at 897; *see also Anderson,* 483 U.S. at 641, 107 S.Ct. 3034 ("relevant question" is "objective" yet "fact-specific"); *Jackson v. Hoylman,* 933 F.2d 401, 403 (6th Cir.1991) (affirming a denial of summary judgment on qualified immunity grounds and stating: *"it is impossible to determine, without choosing between the parties' sharply different factual accounts, whether [the conduct of] the officers . . ., objectively assessed, was reasonable."* (emphasis added)). Consequently, the Court will deny Defendants' summary judgment motion because there is "a

factual dispute as to an issue on which the question of immunity turns." *Cameron v. Seitz,* 38 F.3d 264, 273 n. 2 (6th Cir.1994) (citing *Poe v. Haydon,* 853 F.2d 418, 426 (6th Cir.1988)) ("summary judgment would not be appropriate if there is a factual dispute (i.e., a genuine issue of material fact) involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights." (citing *Green v. Carlson,* 826 F.2d 647, 652 (7th Cir.1987))). *See also Doe v. Bowles,* 254 F.3d 617, 622 (6th Cir.2001); *Bass v. Robinson,* 167 F.3d 1041, 1051 (6th Cir.1999) (citing *Jackson,* 933 F.2d at 403); O'Malley, Grenig & Lee, 3B *Federal Jury Practice & Instructions* § 165.00.04 (5th ed.2001) ("The issue of qualified immunity is a question of law for the court. However, the operation of qualified immunity principles may require the jury to examine the degree to which the law was settled at the time the defendant acted, and the defendant's objective reasonableness in understanding that what the defendant did was a violation of that standard.").

## IV. CONCLUSION

**ACCORDINGLY, IT IS HEREBY ORDERED** that, in Civil Case No. 02–40183, Defendants' motion for summary judgment [docket entry 19] is **DENIED**.

**IT IS FURTHER ORDERED** that, in Civil Case No. 02–40315, Defendant's motion for summary judgment [docket entry 11] is **GRANTED**.

**SO ORDERED.**