Joseph Carleton HARDESTY and Kenneth Hardesty Plaintiffs,

v.

HAMBURG TOWNSHIP, a Michigan municipal corporation, Patrick Debottis, individually, James Sanderson, individually, Brandon Bullock, individually, Alysha Garbacik, individually, Robert Krichke, individually and in his official capacity, Howard Dillman, in his official capacity, Kevin Wiley, in his official capacity, The Village of Pinckney, a Michigan municipal corporation, Dennis W. Aseltine, individually and in his official capacity, Michael Trenkle, individually and Steven Hart, individually, Defendants.

No. CIV.03–72054.

United States District Court, E.D. Michigan, Southern Division.

Jan. 13, 2005.

824

Peter J. Osetek, Osetek Assoc., Ann Arbor, MI, for Plaintiffs.

Michael E. Rosati, Carlito H. Young, Johnson, Rosati, Farmington Hills, MI, Thomas A. Matthews, Brighton, MI, G. Gus Morris, Kupelian, Ormond, Southfield, MI, for Defendants.

## OPINION AND ORDER

FEIKENS, District Judge.

Plaintiffs' claims against all Defendants are all based on an alleged violation of Plaintiffs' constitutional rights when the police officer Defendants conducted a war-

rantless search of Plaintiffs' home. Plaintiffs have made a Motion for Summary Judgment, and Defendants have made their own motions to dismiss or for summary judgment. I GRANT Defendants' Motions for Summary Judgment on all counts, because I find that no such constitutional violation occurred and even if the police officers violated Plaintiffs' rights, qualified immunity immunizes the police officer Defendants from this lawsuit altogether.

## I. FACTUAL BACKGROUND

### A. The Parties

Plaintiff Joseph Hardesty and Plaintiff Kenneth Hardesty are residents of Hamburg Township, Livingston County Michigan. (Pl.s' Am. Compl. ¶¶ 4–5.)

Defendant Robert Krichke is the Hamburg Police Chief. *Id.* at ¶ 11. Defendant Patrick DeBottis is the Hamburg Police Sergeant. *Id.* at ¶ 7. Defendants James Sanderson, Brandon Bullock and Alysha Garbacik are Hamburg Police Officers. *Id.* at ¶¶ 8–10.

Defendant Howard Dillman is the Supervisor of Hamburg. *Id.* at ¶ 12. Defendants Patrick Hohl and Kevin Wiley are Hamburg Trustees. *Id.* at ¶¶ 13–14. Defendant Dennis Aseltine is the Pinckney Police Chief. *Id.* at ¶ 16. Defendants Michael Trenkle and Steven Hart are Pinckney Police Officers. *Id.* at ¶ 17.

### B. The Circumstances

Plaintiff Kenneth Hardesty and his wife, Joanna Hardesty, own a home located at 4277 E. M–36, Hamburg, Township, Michigan. (Pl.s' Am. Compl. ¶ 25.) On May 27, 2001, at 2:11 a.m., Bullock arrested Julie Taylor, a minor, for Operating Under the Influence of Liquor. (Pinckney's Mot. for Summ. J. at 2.) Upon her arrest, Taylor told Bullock that she had consumed alcohol with Joseph Hardesty at the Hardestys' home. (Pl.s' Am. Compl. ¶ 27.)

The Hamburg Defendants[1] claim that after Bullock completed the booking process, Bullock, Sanderson and Garbacik departed for the Hardestys' home to investigate the situation. (Hamburg's Br. for Summ. J. at 1; citing Ex. 1, State Trial Tr., July 2, 2002 at 36, 168.) Sanderson and Garbacik approached the front door of the Hardestys' home. (Hamburg's Br. for Summ. J. at 2; citing Ex. 1, State Trial Tr., July 2, 2002 at 222.) The Hamburg officers claim that they attempted to wake the people inside the home. (Hamburg's Br. for Summ. J. at 2.) The officers contacted Livingston County dispatch and dispatch telephoned the Hardestys' home. (Hamburg's Br. for Summ. J. at 2; citing Ex. 1, State Trial Tr., July 2, 2002 at 174, 184–185, 204.) The officers also pounded on the front door. (Hamburg's Br. for Summ. J. at 2; citing Ex. 1, State Trial Tr., July 2, 2002 at 170, 210.) The officers also attempted to contact Kenneth Hardesty at his workplace. (Hamburg's Br. for Summ. J. at 2; citing Ex. 1, State Trial Tr., July 2, 2002 at 174.) The Hamburg Defendants allege that the officers then went around to the back of the Hardestys' home to try and contact the people inside. (Hamburg's Br. for Summ. J. at 3; citing Ex. 1, State Trial Tr., July 2, 2002 at 171.)

The Hardestys have a deck on the back of their home. This deck has stairs leading up to the deck from the yard, and from this deck there is an entrance into the home. (Hamburg's Br. for Summ. J. at 3; citing Ex. 1, State Trial Tr., Sep. 5, 2002 at 124–5.) There are no pathways leading from the front yard to the deck, and the

---

1. The "Hamburg Defendants" include: Hamburg Township, Krichke, Sanderson, Bullock and Garbacik.

Hardestys' yard does not have a fence. (Hamburg's Br. for Summ. J. at 3; citing Ex. 1, State Trial Tr., Sep. 5, 2002 at 124.) Furthermore, Plaintiff Joseph Hardesty admits that the trees on the property did not block the neighbors' view of the back of the Hardestys' house.[2] (Pl.s' Ex. List Ex. K, Dep. of Joseph Hardesty at 17.)

From the Hardestys' deck the officers looked through a window into the home. *Id.* at 3. The officers claim that they observed Ryan Adam Dean inside with blood on his hands, and some on his pants. (Hamburg's Br. for Summ. J. at 3; citing Ex. 1, State Trial Tr., July.2, 2002 at 171, 212.) The officers attempted to wake Dean by shining flashlights in Dean's face and pounding on the window. (Hamburg's Br. for Summ. J. at 3; citing Ex. 1, State Trial Tr., July 2, 2002 at 14, 63.) The officers allege that Dean did not respond or even move. (Hamburg's Br. for Summ. J. at 3; citing Ex. 1, State Trial Tr., July 2, 2002 at 64, 172.) The officers contacted Sergeant DeBottis and requested advice. (Hamburg's Br. for Summ. J. at 3; citing Ex. 1, State Trial Tr., July 2, 2002 at 175.) DeBottis told the officers that they should try and make entry into the house to check on the well-being of Dean. (Hamburg's Br. for Summ. J. at 3; citing Ex. 1, State Trial Tr., July 2, 2002 at 175; State Trial Tr., Sep. 4, 2002 at 7, 18.)

The officers entered a car and used a garage door opener, found therein, to enter the home. (Pl.s' Am. Compl. ¶¶ 35, 36.) The Pinckney Defendants claim that it was at this time that the Pinckney officers arrived at the Hardestys' home, after the Hamburg police officers decided to enter the home through the garage, but before the Hamburg police officers entered the garage.[3] (Pinckney's Mot. for Summ. J. at 2–3; citing Ex. A at 2.) All the officers entered the Hardestys' home through the garage without the permission of the owners. (Pl.s' Am. Compl. ¶¶ 32, 38.)

The officers entered the home and found three males under the age of 21 (Plaintiff Joseph Hardesty, Timothy Alan Brewer and Dean). (Pinckney's Mot. for Summ. J. at 3–4.) The officers observed beer cans, some empty and some half full, and they claim that they could smell alcohol on all the minors. *Id.* at 3. The Hamburg officers administered a breath test on the minors and issued tickets for minor in possession of alcohol ("MIP"). *Id.* at 3.

Joseph Hardesty initially was prosecuted as a juvenile. (Pl.s' Mot. for Partial Summ. J. at 4.) In December 2002, the Livingston Family Court ruled that the officers invasion into the Hardestys' home was illegal. *In re Brewer*, 01200505DL at 3 (Cir. Ct. Livingston County, Mich. Fam. Div. Dec. 12, 2002). On June 5, 2003, the 53rd District Court for the State of Michigan dismissed charges against Joseph Hardesty. *Michigan v. Hardesty*, HT 033405 SM, at 11 (Mich. 53rd District Ct. June 5, 2003).

## II. ANALYSIS

I find that: (1) the state court's decision does not decide, for this civil action in this Court, whether the Defendants' actions were constitutional; (2) the officers' actions were constitutional; and (3) even if the Defendant officers' actions were not constitutional qualified immunity immu-

---

2. This statement conflicts with the assertion of Plaintiffs' own attorney who stated at oral arguments on January 10, 2005, that the neighbors could not see the back of the house because of the trees. (Hr'g on Def.s' Mot. for Summ. J. Jan. 10, 2005.)

3. The "Pinckney Defendants" include: the Village of Pinckney, Aseltine, Trenkle and Hart.

nizes the Defendant officers from this lawsuit. I address each of these in turn.

## A. Effect of County Family Court and Circuit Court Decisions

■ A state court judgment's preclusive effect is determined by that state's law. *Peterson Novelties, Inc. v. City of Berkley*, 305 F.3d 386, 394 (6th Cir.2002); citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). "Under Michigan law, issue preclusion forecloses the relitigation of an issue in a subsequent cause of action between the same parties or their privies, where an earlier proceeding resulted in a valid, final judgment and the same issue was actually litigated and necessarily determined." *Smith v. Oakland County Cir. Ct.*, 344 F.Supp.2d 1030, 1050 (E.D.Mich. 2004); citing *Peterson Novelties, Inc.*, 305 F.3d at 396; citing *Ditmore v. Michalik*, 244 Mich.App. 569, 625 N.W.2d 462 (Mich. App.2001); *see also Moore v. State of Michigan*, 2004 WL 2533669 (Mich.App. Nov. 9, 2004).

■ For due process reasons, prior decisions will not bind someone who was not a party to the prior cause of action. *Howell v. Vito's Trucking & Excavating Co.*, 386 Mich. 37, 42, 191 N.W.2d 313 (Mich. 1971); citing *Bernhard v. Bank of Am. Nat. Trust & Savings Ass'n*, 19 Cal.2d 807, 811, 122 P.2d 892 (Ca.1942). In the family court decision the parties involved were the State of Michigan and Brewer. *In re Brewer*, 01200505DL (Cir. Ct. Livingston County, Mich. Fam. Div. Dec. 12, 2002). In *Hardesty*, HT 033405 SM (Mich. 53rd District Ct. June 5, 2003), the parties involved were the State of Michigan and Joseph Hardesty. Defendants did not have a personal stake in the outcome of the earlier state proceedings, this further reinforces that Defendants were not parties or privy to the earlier state court actions.[4] *Kegler v. City of Livonia*, 173 F.3d 429 n. 2 (6th Cir.1999). Here any claim of issue preclusion arising out of the prior state court decisions must fail, because all Defendants and Plaintiff Kenneth Hardesty were not parties in the prior actions.

## B. Motion for Summary Judgment Standard

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court must view the evidence and any inferences drawn from the evidence in a light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted), *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir.2001). The burden on the moving party is satisfied where there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The trial court has some discretion to determine

---

4. Although Plaintiffs cite *Glass v. Abbo*, 284 F.Supp.2d 700 (E.D.Mich.2003), for the proposition that the Defendants are in privy to the prior state court proceedings. *Glass* actually found that the defendant police officers were not parties or in privity to the prior state court criminal proceedings. *Id.* at 705. The *Glass* court stated that (1) the defendants clearly were not parties to the prior criminal case; and (2) the defendants "did not have a personal stake in the outcome of the earlier proceeding." *Id.* at 705.

whether the respondent's claim is plausible.. *Betkerur v. Aultman Hosp. Ass'n,* 78 F.3d 1079, 1087–88 (6th Cir.1996). *See also, Street ·v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479–80 (6th Cir.1989).

### C. Constitutional Protection

Despite the Plaintiffs' claim that the police officer Defendants violated the Hardestys' Fourth Amendment right to be free from an unreasonable search and seizure, the Defendant officers' actions were constitutional.

### 1. Fourth Amendment Protection

The Fourth Amendment of the United States Constitution provides that individuals shall be free from warrantless unreasonable searches and seizures in their "persons, houses, papers, and effects [...]." U.S. Const. Amend. IV. There are only a few exceptions to the rule that the government must obtain a warrant supported by probable cause to intrude into a private dwelling. *Thompson v. Louisiana,* 469 U.S. 17, 19–20, 105 S.Ct. 409, 83 L.Ed.2d 246 (1984). These exceptions to the Fourth Amendment prohibition exist where the public interest requires there be a more flexible application of the rule. *Arkansas v. Sanders,* 442 U.S. 753, ·759, 99 S.Ct. 2586, 61 L.Ed.2d 235, (1979). Two of these exceptions are (1) voluntary consent to search and (2) exigent circumstances. *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Michigan v. Tyler,* 436 U.S. 499, 509, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978). Exigent circumstances include a Fourth Amendment warrant exception where law enforcement faces a "need to protect or preserve life or avoid serious injury [...]." *Mincey v. Arizona,* 437 U.S. 385, 392–3, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978).

The U.S. Supreme Court has extended Fourth Amendment protections to the home's curtilage, the land surrounding and associated with the home. *Oliver v. United States,* 466 U.S. 170, 180, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984). In *United States v. Dunn,* 480 U.S. 294, 301, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987), the Supreme Court defined four factors that a court should apply to determine whether an area is "so intimately tied to the home" that the area is considered to be part of a home's curtilage. That Court stated that the four factors are "[1] the proximity of the area claimed to be curtilage to the home, [2] whether the area is included within an enclosure surrounding the home, [3] the nature of the uses to which the area is put, and [4] the steps taken by the resident to protect the area from observation by people passing by." *Dunn,* 480 U.S. at 301, 107 S.Ct. 1134.

### 2. Lack of a Constitutional Violation

The parties do not dispute that the Pinckney and Hamburg police officers entered and searched the Hardestys' home without a warrant. (Pl.s' Am. Compl. ¶ 32; Pinckney's Mot. for Summ. J. at 3.) Furthermore, if the Hamburg police, while on the Hardestys' deck, perceived an emergency inside the Hardestys' home, the parties also do not dispute that all of the officers would have been entitled to enter the home without a warrant under the Fourth Amendment's exigent circumstances requirement. (Pl.s' Resp. to Pinckney's Mot. for Summ. J. at 6; Pinckney's Mot. for Summ. J. at 14; *see Mincey,* 437 U.S. at 392–3, 98 S.Ct. 2408.)

#### a. The Hardesty's Deck

█ Plaintiffs argue that the Hardestys' deck was covered by the Fourth Amendment's protection of a home's curtilage and that the officers were required to have a warrant to enter upon the backyard deck. (Pl.s' Mot. for Partial Summ. J. at 7.) However, the police officer Defendants did not violate Plaintiffs' Fourth Amendment

rights with respect to Plaintiffs' curtilage. The Hardestys' deck is attached to their home, and there is a hot tub on the deck. (Debottis' Ans. to Pl.s' Mot. for Partial Summ. J. Ex. 10 at 1.) However, the Hardestys do not claim to have taken any steps to protect the area from observation and the deck is not included within an enclosure surrounding the home.[5] To the contrary, there are steps on the deck that permit access to anyone who should choose to approach the deck. *Id.* at Ex. 10 at. 1.

In *United States v. Hopper*, 58 Fed. Appx. 619, 623–24, 2003 WL 152316 at *3–4 (6th Cir.2003), the Sixth Circuit found that a raised deck behind the appellant's home was not entitled to any Fourth Amendment warrant protection. In *Hopper*, police officers knocked on the appellant's front door and no one responded, then the officers went around to the back of the house to knock on appellant's back door. *Id.* at 58 Fed.Appx. at 622, 2003 WL 152316, *2. When the officers went around back the police officers observed contraband under a raised deck behind the appellant's home. *Id.* at 58 Fed.Appx. at 622–23, 2003 WL 152316, *2–3. In *Hopper*, the appellant's home, like the Hardestys' home, was not enclosed, furthermore, the appellant, similar to the Hardestys, had not taken any special measures to protect the area from observation. *Id.* at 58 Fed.Appx. at 624, 2003 WL 152316, *3. However, unlike the present case, the appellant in *Hopper* had three "No Trespassing" signs. *Id.* at 58 Fed.Appx. at 622, 2003 WL 152316, *2.

The Sixth Circuit Court of Appeals teaches that even if the curtilage of a home is entitled to protection, "law enforcement officials may encroach upon the curtilage for the purpose of asking questions of the occupants." *Hopper*, 58 Fed.Appx. 619, 624, 2003 WL 152316 at *3; citing *United States v. Hammett*, 236 F.3d 1054, 1059 (9th Cir.2001).

Therefore, viewed in a light most favorable to the Plaintiffs, the Hardestys' deck is not part of their home's curtilage and the Hamburg officers did not need a warrant when they perceived an emergency situation from the deck.

### b. Emergency Situation

■ Plaintiffs also dispute that the police officer Defendants objectively perceived Dean to be serious injured.[6] At oral arguments Plaintiffs argue that the police officer Defendants could not see an emergency situation inside the Hardestys' home, and that the officers fabricated their motive for entering the Hardestys' after the officers found Dean. (Hr'g on Def.s' Mot. for Summ. J. Jan. 10, 2005.) Plaintiffs rely solely upon the testimony of Joseph Hardesty who claims that the window blinds or drapes were closed before the police arrived.[7] (Pl.s' Ex. List Ex. K, Dep. of Joseph Hardesty at 77.) The Hamburg Police Officers dispute that there were any blinds or drapes covering the window.

---

5. Plaintiffs claim instead that the area is "sufficiently protected from view by passersby." (Pl.s' Mot. for Partial Summ. J. at 7.) On the contrary, a photograph of the deck from the backyard demonstrates that there is no obstruction protecting the deck from observation. (Debottis' Ans. to Pl.s' Mot. for Partial Summ. J. Ex. 10 at 1.)

6. In their brief Plaintiffs argue that in hindsight there was no emergency, however, they do not provide evidence that demonstrates

that at the time the police officers reasonably perceived an emergency situation the officers should have known that in fact there was no emergency. (Pl.s' Resp. to Pinckney's Mot. for Summ. J. at 1–3.)

7. Plaintiff Joseph Hardesty also admits that when the police officers arrived and administered the breathalyzer test he was still intoxicated. (Pl.s' Ex. List Ex. K, Dep. of Joseph Hardesty at 6.)

(Hamburg's Br. for Summ. J. at Ex. 1, State Trial Tr., July 2, 2002 at 63, 173.)

Plaintiff Kenneth Hardesty admits that the police officers would have been able to see an individual on the couch even if the drapes were closed.[8] (Hamburg's Br. for Summ. J. Ex. 1, State Trial Tr., Sep. 5, 2002 at 87.) Viewing this evidence in a light most favorable to the Plaintiffs, I find that Defendants had a reasonable belief that they had encountered an emergency situation even if they could not see the blood on Dean's hand or pants.

The Defendant officers knew that minors were consuming alcohol at the Hardestys' home. (Pl.s' Am. Compl. ¶ 27.) Even if the drapes were closed, after looking through the window Defendants also knew that inside the Hardestys' home Dean was not responding to knocking on the door and window, a phone ringing or a bright light shined onto Dean's face. (Hamburg's Br. for Summ. J. at 3; citing Ex. 1, State Trial Tr., July 2, 2002 at 14, 63.) It is common knowledge that when anybody consumes an excessive amount of alcohol in a short period of time the alcohol can function as a poison and that if an individual consumes a large amount of alcohol it can result in unconsciousness. Excessive alcohol can stop the heart and lungs, and it is widely understood that, among other things, an individual who has consumed an excessive amount of liquor suffers a great risk of choking to death on their own vomit while unconscious. Therefore, I find that the officers could reasonably believe that because Dean was not responding, he might be suffering from alcohol poisoning and an emergency situation existed within the Hardestys' home.

Additionally, Plaintiffs even request that this Court adopt the Livingston Family Court's ruling regarding the Defendant Officers' search of the property as conclusive. (Pl.s' Br. for Summ. J. at 9.) Although, I do not agree with the either state courts' holdings in the entirety, I do agree that the both of the state courts correctly found that the Defendant officers saw a body on the couch inside the Hardestys' home. *Hardesty,* HT 033405 SM at 3 (Mich. 53rd District Ct. June 5, 2003); *In re Brewer,* 01200505DL at 3 (Cir. Ct. Livingston County, Mich. Fam. Div. Dec. 12, 2002). Viewing the evidence in a light most favorable to the Plaintiffs, I find that there is no evidence that the officers did not reasonably perceive an emergency inside the Hardestys' home. Thus, the police officer Defendants did not violate Plaintiffs' constitutional rights when they entered Plaintiffs' deck and witnessed what they perceived to be an emergency within the home. Furthermore, because the police officers perceived an emergency within the Hardestys' home, they were permitted to enter the home without a warrant. Because Plaintiffs' claims are based on the incorrect premise that the police officer Defendants' violated Plaintiffs' constitutional rights, I GRANT Defendants' Motions for Summary Judgement in respect to all of Plaintiffs' claims.

### D.  Qualified Immunity

■ Even if the Defendant police officers violated Plaintiffs' Fourth Amendment rights, I believe that the Defendant officers are entitled to qualified immunity. The U.S. Supreme Court in *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), held that government officials performing discretionary functions are entitled to a qualified immunity from "liability for civil damages insofar as their conduct does not violate clearly

---

8.  However, Plaintiff Kenneth Hardesty also claims that the officers would not have been able to see that person's clothing color or any "fine movements." (Hamburg's Br. for Summ. J. Ex. 1, State Trial Tr., Sep. 5, 2002 at 87.)

established statutory or constitutional rights of which a reasonable person would have known." Courts deciding whether a party is entitled to qualified immunity must consider: (1) whether, based on the facts, viewed in a light most favorable to the party asserting the injury, the officer's conduct violated a constitutional right; and (2) if so, "whether the law clearly established that the officer's conduct was unlawful in the circumstances of the case." *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *see Brosseau v. Haugen*, —— U.S. ——, 125 S.Ct. 596, —— L.Ed.2d —— (2004).

The Sixth Circuit teaches that "[f]or a right to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir.2002); citing *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir.1992). The Sixth Circuit instructs that whether an officer would understand that what he is doing violates an individual's right is measured objectively and can be decided as a matter of law. *Brandenburg v. Cureton*, 882 F.2d 211, 215 (6th Cir.1989). The Fifth Circuit teaches that the Court decides the whether the officers' conduct is objectively reasonable, not the jury. *Mangieri v. Clifton*, 29 F.3d 1012, 1015–16 (5th Cir.1994). The U.S. Supreme Court clarified that the unlawfulness of the officer's act must be apparent, although the particular act at issue does not need to have been held unlawful. *Burchett*, 310 F.3d at 942; citing *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

*Hopper* demonstrates that Defendant officers' presence on a Hardestys' back yard deck was not a clear violation of established law, because it provides a basis for believing their conduct was permitted. Furthermore, as I stated above, based on the emergency exception to the Fourth Amendment the Defendant officers entrance into the Hardestys' home without a warrant was not objectively unreasonable. Therefore, I also find that qualified immunity immunizes all the officers from this lawsuit. Thus, I GRANT the Defendant officers' Motions for Summary Judgement in respect to all of Plaintiffs' claims.

## III.  CONCLUSION

Plaintiffs' claims against all Defendants are all based on the premise the Defendant officers violated Plaintiffs' Fourth Amendment rights. However, Plaintiffs are unable to establish that the Fourth Amendment creates a constitutional protection from a law enforcement officer's warrantless search with respect to back yard deck under the circumstances of this case. Furthermore, qualified immunity immunizes all the officers from this lawsuit. Therefore, all of Plaintiffs' claims against all Defendants must fail. Thus, I GRANT Defendants' Motions for Summary Judgment for all counts.

**IT IS SO ORDERED.**